**John Allen BREWER, II, Plaintiff–Appellant,**

v.

**ATNET RICHARDSON and CSC Insurance Services, Uninsured Motorist Carrier, Defendants–Appellees.**

Supreme Court of Tennessee, at Jackson.

Jan. 30, 1995.

Alex Saharovich, Nahon & Saharovich, Memphis, for plaintiff-appellant.

Charles A. Sevier, David A. McLaughlin, Wilson, McRae, Ivy, Sevier, McTyier, and Strain, Memphis, for defendant-appellee CSC Ins. Services.

## OPINION

DROWOTA, Justice.

In this uninsured motorist case, the plaintiff John Allen Brewer appeals from the Court of Appeals' reversal of the circuit court's order denying the petition for a writ of certiorari filed by the uninsured motorist carrier. The issue for our determination is: whether Tenn.Code Ann. § 56–7–1206(d) allows a plaintiff, after the process sent to the uninsured motorist defendant has been returned unserved, to proceed directly against the uninsured motorist carrier even if the defendant is, for some reason, dismissed from the case. We hold that the statute does allow such action, and therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

## FACTS AND PROCEDURAL HISTORY

On May 13, 1992, John Brewer filed an action against Atnet Richardson in the General Sessions Court of Shelby County to recover for injuries resulting from an automobile accident allegedly caused by Richardson's negligence. The civil warrant issued to Richardson at her last known address; and a warrant also issued, pursuant to Tenn.Code Ann. § 56–7–1206(a), to CSC Insurance Services, the uninsured motorist carrier for the owner of the car he was driving at the time of the accident. CSC, a New Jersey company, was served through the Commissioner of Insurance on May 18, 1992. However, the warrant issued to Richardson was returned with the notation "not to be found" on June 10, 1992.

The original hearing date was set for July 6, 1992, but the case was continued until August 3. On that date, neither Richardson nor CSC appeared to defend the action. At the hearing Brewer testified that his injuries were caused by Richardson's negligence; and he testified that Richardson had advised him that she did not have automobile liability insurance. At the conclusion of the evidence, the general sessions judge awarded Brewer a judgment in the amount of $14,999, its jurisdictional limit. At some point on August 3, for reasons that are not altogether clear, the general sessions judge stamped "Voluntary Nonsuit" on the civil warrant, and added the words "as to Atnet Richardson" in his own handwriting.

On August 24, 1992, CSC filed a motion to vacate the judgment, arguing that because Tennessee law does not permit a direct action against an uninsured motorist carrier, and that because a nonsuit had been taken as to Richardson, the only defendant in the case, the judgment was the product of a direct action against CSC and was thus void. Although the record does not contain the general session judge's ruling on the motion, presumably it was denied, because CSC made the same argument on September 9, 1992, when it petitioned the Shelby County Circuit Court to issue a writ of certiorari declaring the judgment void. On December 1, 1992, the circuit court denied CSC's petition for a writ of certiorari.

CSC then appealed to the Court of Appeals, and on December 21, 1993, that Court reversed the judgment, stating that "[t]here must be a judgment against the uninsured motorist, Richardson, in the instant case, before the uninsured motorist carrier can be held liable. When a non-suit was taken as to Richardson, the case was, in essence, concluded." We granted Brewer's Rule 11 application in order to clarify the effect of our uninsured motorist statutes in situations when the defendant's identity and address are known, but process is nevertheless returned unserved.

## ANALYSIS

Tenn.Code Ann. § 56–7–1206(d) appears to allow a plaintiff to bring a direct action against the uninsured motorist carrier when the process issued to the uninsured motorist defendant is returned unserved. That section provides:

In the event that service of process against the uninsured motorist, which was issued to the motorist's last known address, is returned by the sheriff or other process server marked, "Not to be found in my county," or words to that effect, or if service of process is being made upon the secretary of state for a nonresident uninsured motorist and the registered notice to the last known address is returned without service on the uninsured motorist, the service of process against the uninsured motorist carrier, pursuant to this section, shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in such a case.

CSC argues that despite the language of § 56–7–1206(d), a judgment must first be obtained against the uninsured motorist defendant because Tennessee law has long provided that a plaintiff may not bring suit directly against the uninsured motorist carrier. CSC cites *Glover v. Tennessee Farmers Mutual Ins. Co.*, 225 Tenn. 306, 468 S.W.2d 727 (Tenn.1971), which it asserts has not been overruled and is thus "still controlling," as support for this general proposition. CSC argues further that *Glover* is sound because to allow an action to be brought directly against the uninsured motorist carrier would severely compromise the insurer's interest in keeping its identity anonymous—an interest specifically recognized and protected by Tenn.Code Ann. § 56–7–1206(a).

Initially, CSC is correct that an uninsured motorist carrier has a valid interest in keeping its participation in litigation hidden from the jury for the purposes of preventing prejudice. § 56–7–1206(a) provides, in pertinent part:

Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant. Such company shall thereafter have

the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name ... and provided further, that the evidence of service upon the insurance carrier shall not be made a part of the record.

CSC is also correct that this Court held in *Glover* that a plaintiff may not, absent a specific authorization in the policy, bring a suit directly against the uninsured motorist carrier. Our decision in *Glover* disallowing such suits was based on a number of different considerations, including: (1) the insurer's right to remain anonymous; (2) the effect of direct suits on the insurer's statutory right of subrogation; and (3) the nature of the "protection" afforded insureds by the uninsured motorist statutes. The *Glover* court addressed this latter consideration, and indeed summarized its holding, in the following language:

The whole intent and purpose of the uninsured motorist act is, in essence, to provide *protection* by making the insurance carrier stand as the insurer of the uninsured motorist, with two necessary consequences. (1) The Suit has to be brought against the uninsured motorist, with the fact of insurance excluded as a possible prejudicing factor, as in any other such case; and (2) the insurance company is bound by the judgment rendered in that suit, to the extent of its policy limits, where it is afforded the statutory opportunity to defend the uninsured motorist.

468 S.W.2d at 730 (emphasis in original).

Although CSC is correct thus far, it is incorrect when it asserts that the broad holding in *Glover* controls the case before us. In *McCall v. Maryland Cas. Ins. Co.*, 516 S.W.2d 353 (Tenn.1974), decided three years after *Glover*, this Court had another opportunity to address the uninsured motorist statutes. In *McCall* the plaintiffs brought a personal injury action against James Rupe, an uninsured motorist. Process issued to Rupe at his last known address; and process also issued to plaintiffs' uninsured motorist

carrier pursuant to the forerunner to § 56–7–1206(a). Because plaintiffs could not obtain service on Rupe, they brought an action directly against the insurer, arguing that the insurer had a duty to appear and defend Rupe. The trial court granted the insurer's motion for summary judgment.

The *McCall* court, in an opinion written by Justice Harbison, affirmed the judgment of the trial court. In its analysis, the Court first discussed *Glover* and applicable precedent from the Court of Appeals, and reasoned that while uninsured motorist carriers have the statutory right to defend the uninsured motorist, they have no duty to do so. The Court then held that the fact that the plaintiff had failed to obtain service over the uninsured motorist, combined with the broad holding in *Glover* prohibiting direct suits against the insurer, required that the action be dismissed. The Court explained as follows:

> While the position in which appellants find themselves is regrettable, it is no different from the situation in which any tort claimant is placed when undertaking to pursue a claim against an insured motorist upon whom service of process cannot be obtained. As pointed out in the *Glover* case, *supra,* in many respects the uninsured motorist carrier stands in the position of a liability insurer, *and under present statutory provisions it is no more subject to a direct action by a tort claimant than is any other liability insurer.*

516 S.W.2d at 355 (emphasis added).

Justice Henry agreed with both the majority's result and rationale, although he did so "with extreme reluctance." His separate concurring opinion provides:

> The purpose of the Uninsured Motorist Law is to provide recompense to innocent persons who receive bodily injury or property damage through an uninsured motorist who is financially unable to respond in damages.
>
> *To permit the insurer to charge and collect a premium on a policy provision designed to afford uninsured motorist coverage and then to deny such coverage to a person injured by an uninsured motorist who damages and disappears perverts that purpose and frustrates justice.*
>
> *Our statute provides coverage in the case of the 'hit-and-run' driver, but denies it in the case of the 'hit-and-hide' driver.*
>
> *This deficiency in our uninsured motorist statutes addresses itself to the General Assembly. It is to be hoped that it will see fit to end this injustice.*

*Id.* (emphasis added) [citations omitted].

The General Assembly agreed with the concerns voiced by Justice Henry, for it passed, at the very next session, the provision now codified at § 56–7–1206(d). 1975 Tenn.Pub.Acts, ch. 164, § 1. Moreover, it is clear that the legislature intended to allow plaintiffs to proceed directly against uninsured motorist carriers because Senator Robert T. Byrd, the sponsor of the bill, stated in the debates before the third and final reading that "this bill will allow someone [after service of process has been returned unserved] to proceed directly against the uninsured motorist carrier." Senate Tape # 80 (April 28, 1975). Therefore, when the language of § 56–7–1206(d) is read in light of *McCall* and the bill's legislative history, it is beyond question that in enacting the statute the legislature intended that a plaintiff be allowed to sue the uninsured motorist carrier directly if he is unable to obtain service of process over the uninsured motorist defendant. Moreover, this was recognized by the Court of Appeals in *Lady v. Kregger,* 747 S.W.2d 342 (Tenn.App.1987), when it stated that:

> "[t]he intention of the Legislature in enacting T.C.A. § 56–7–1206 was to provide an efficient procedure whereby the plaintiff could obtain complete relief when injured by an uninsured motorist. *Subsection (d) is the procedure required to perfect a direct action against the uninsured motorist carrier when the whereabouts of the alleged uninsured motorist are unknown.*"

747 S.W.2d at 345 (emphasis added).

Because § 56–7–1206(d) allows a direct action against the insurer, the fact that a volun-

tary non-suit was granted as to the uninsured motorist Richardson in this case is immaterial. Once the process issued to Richardson was returned with the notation "not to be found," Brewer had the right under the statute to proceed directly against CSC. That Brewer possessed this right does not mean, of course, that he was relieved of the burden of proving the elements of his case, including the fact that Richardson was actually uninsured. *See Gray v. Tennessee Farmers Mutual Ins. Co.*, 727 S.W.2d 958, 959–60 (Tenn.App.1987); *Jones v. Prestige Casualty Co.*, 646 S.W.2d 918, 920 (Tenn. App.1982). However, Brewer did present evidence of Richardson's lack of insurance at the general sessions trial, and because CSC did not appear to defend the action, that testimony must be considered as uncontroverted. Thus, because Brewer carried his burden of proof, and because the Court of Appeals erred in its interpretation of § 56-7-1206(d), the judgment of that Court is reversed, and the judgment of the circuit court reinstated.

ANDERSON, C.J., and REID and BIRCH, JJ., concur.