# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
January 23, 2013 Session

## RICHARD LIPUT v. BOBBY GRINDER

**Direct Appeal from the Circuit Court for Hardin County**
**No. 4389      Charles C. McGinley, Judge**

---

**No. W2012-01431-COA-R3-CV - Filed February 27, 2013**

---

Appellant appeals the trial court's grant of summary judgment to the Appellee uninsured motorist carrier for failure to properly and timely serve the alleged tortfeasor. After a careful review of the record, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded.**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Richard Liput, Savannah, Tennessee, Pro Se.

Colin M. McCaffrey, Goodlettsville, Tennessee, for the appellee, State Auto Mutual Insurance Company.

## OPINION

### I. Background

On November 10, 2009, Plaintiff/Appellant Richard Liput was involved in an automobile accident with Defendant Bobby Grinder. According to Mr. Liput, Mr. Grinder struck Mr. Liput with his car  while Mr. Liput was walking across a Wal-Mart parking lot. On July 14, 2010, Mr. Grinder died of causes unrelated to the accident. On August 2, 2010, Mr. Grinder's insurer, State Farm, settled with Mr. Liput for the policy limits of Mr. Grinder's insurance, $50,000.00.

Mr. Liput filed a complaint for damages against Mr. Grinder on November 5, 2010. On November 8, 2010, a summons was issued to Mr. Grinder at his last known address. On

the same day, a summons was also issued to Mr. Liput's Uninsured Motorist carrier, Appellee State Auto Mutual Insurance Company ("Uninsured Motorist carrier"). Service was timely accomplished on the Uninsured Motorist carrier through the Secretary of State. The summons issued to Mr. Grinder, however, was not returned to the court. The record on appeal contains a copy of the summons issued to Mr. Grinder, subsequently obtained by the Uninsured Motorist carrier during the trial court proceedings; however, this copy of the summons does not include any notation that Mr. Grinder was "not to be found" or any other indication of attempted service. No further summons was issued to Mr. Grinder.

The Uninsured Motorist carrier filed an answer on January 6, 2011, denying Mr. Grinder's negligence, demanding strict proof of damages, and invoking its right to subrogation. On March 31, 2011, Mr. Liput filed a Suggestion of Death regarding Mr. Grinder, which included a motion to substitute the "executor . . . of the estate." The motion was never set for hearing. Moreover, nothing in the record suggests that an estate was in existence at the time the motion was filed or that Mr. Grinder's estate was ever opened.

On November 18, 2011, the Uninsured Motorist carrier filed a motion for summary judgment. The Uninsured Motorist carrier argued that, because neither Mr. Grinder nor his personal representative was properly served in the case, the Uninsured Motorist carrier could not be liable, citing ***Webb v. Werner***, 163 S.W.3d 716, 718 (Tenn. Ct. App. 2005). A hearing on the motion was held on April 20, 2012. At the hearing, the trial court ruled that the lawsuit was "never properly commenced against the correct named defendant pursuant to the mandates of the Tennessee Rules of Civil Procedure 3 & 4 and Tennessee Code Annotated Section 20-5-103. The statute of limitations against the correct named defendant has now expired." The trial court entered an order granting summary judgment and dismissing the case on May 7, 2012. Mr. Liput appeals.

## II. Issues Presented

On appeal, Mr. Liput raises a number of issues, which are taken from his brief:[1]

> 1. Whether the trial court erred in finding that the provisions of the Tennessee Savings Statute need not yield to those of the more specific Uninsured Motorist Provision?

---

[1] The brief filed in this case on behalf of Mr. Liput was prepared by attorney Christopher Donovan. Mr. Donovan did not represent Mr. Liput at any time during the trial court proceedings. On January 3, 2012, Mr. Liput filed a motion in this Court seeking to remove his attorney. This Court granted the motion to remove Mr. Donovan on January 9, 2013. Accordingly, Mr. Liput represented himself at oral argument.

2. Whether the trial court erred in finding that the application of Tennessee Code Annotated Section 56-7-1206(d) did not operate to preserve Mr. Liput's claim against the Uninsured Motorist carrier?

3. Whether the trial court erred in failing to find that the ***Webb v. Werner*** limitation on Tennessee Code Annotated Section 56-7-1206(d) is

4. Whether the trial court erred in failing to discern that ***Bryant v. Estate of Klein*** is not controlling?

5. Whether the trial court erred in allowing the Uninsured Motorist carrier to assert objections to capacity, when the Uninsured Motorist carrier waived its objections by failing to plead specific negative averments in its answer?

6. Whether the trial court erred in allowing the Uninsured Motorist carrier to assert insufficiency of service of process where the Uninsured Motorist carrier waived its objections by failure to recite any facts in support of the defense via responsive pleading, in violation of Tennessee Rule of Civil Procedure 8.03?

7. Whether the trial court erred in failing to find that equitable estoppel bars the Uninsured Motorist carrier's late assertion of statute of limitations and insufficiency of service of process defenses?

8. Whether the trial court erred in its application of the summary judgment standard, when multiple questions of fact existed?

9. Whether the trial court erred in allowing the Uninsured Motorist carrier's continued prosecution of its defense, since its Answer was filed late?[2]

_____

[2] In addition to the appellate brief filed by Mr. Donovan on behalf of Mr. Liput, Mr. Liput, acting *pro se*, also filed an addendum to his brief in which he asserts that the trial court should have withdrawn from the proceedings due to the trial judge's personal relationship with Mr. Grinder. According to Mr. Liput, the trial judge acknowledged that Mr. Grinder attended the same church as the trial judge and referred to Mr. Grinder as a "good Methodist." Accordingly, Mr. Liput argues that the trial court was in error in presiding over the case. From our review of the record, however, this argument was never raised in the trial court. "Allegations of bias and prejudice must be raised at the trial court level by a Motion to Recuse, or the issue is waived." ***Ellis v. Rowe***, No. E2011-00375-COA-R3CV, 2012 WL 391074, at *5 (Tenn. Ct. App. Feb. 8, 2012) (citing ***Yeubanks v. Methodist Healthcare***, No. W2003-01838-COA-R3-CV, 2004 WL 2715338, at *9 (Tenn. Ct. App. Nov. 18, 2004)). However, out of an abundance of caution, we have independently

(continued...)

# III. Standard of Review

Because this case was adjudicated by summary judgment, we first note that a trial court's decision on a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied." *Mathews Partners, L.L.C. v. Lemme*, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn.

---

[2](...continued)
reviewed the record to determine whether the trial court erred in presiding over this case despite his personal relationship with Mr. Grinder. From our review of the record, the trial court's statements regarding its relationship with Mr. Grinder show that Mr. Grinder and the trial court were fellow church members and acquaintances. The Court was faced with a similar argument in *First Peoples Bank of Tennessee v. Hill*, 340 S.W.3d 398 (Tenn. Ct. App. 2010), in which the defendant argued that the trial court should have withdrawn from the case due to his acquaintance with some of the officers of the plaintiff bank. The Court of Appeals affirmed the trial court's refusal to withdraw, stating: "The legal community and the public at large must accept that a judge comes to each case with a past and not every connection between the case at bar and the judge's past can be inflated into a reasonable 'potential for bias.'" *Id.* at 406. Likewise in this case, the contact between the trial court and Mr. Grinder does not rise to the level of creating the "appearance of impropriety" required in order to force a judge to withdraw from a case. *See* Tenn. Sup. Ct. R. 10 Canon 1.2. Accordingly, this argument is without merit.

R. Civ. P. 56.06." ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." ***Mathews Partners***, 2009 WL 3172134, at *3 (citing ***Byrd***, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." ***Id***. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al.***, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms***, 900 S.W.2d 23 (Tenn. 1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in ***Evco Corp. v. Ross***, 528 S.W.2d 20 (Tenn. 1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

***Id***. at 24–25.

### IV. Analysis
### A. Material Factual Disputes

Because summary judgment is predicated on there being no material factual disputes, we first consider Mr. Liput's contention that disputed material facts preclude summary judgment. We, note, however, that Mr. Liput never raised the issue of material factual disputes in the trial proceedings. Instead, he raises this issue for the first time on appeal.

Generally, an issue that is not argued in the trial court is waived on appeal. *See Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010). However, because this Court has a duty to "determine whether factual disputes exist," we will nevertheless review the matter to determine whether any factual disputes preclude adjudication through summary judgment. *See Brooks Cotton Co., Inc. v. Williams*, 381 S.W.3d 414, 419 (Tenn. Ct. App. 2012) (finding facts in dispute, despite the fact that both parties alleged that no material facts were in dispute).

In this case, Mr. Liput argues that summary judgment was inappropriate because several factual disputes exist concerning settlement negotiations made by the parties, which negotiations Mr. Liput allegedly relied upon to his detriment. According to his appellate brief, these facts support Mr. Liput's contention that the doctrine of equitable estoppel operates to bar the Uninsured Motorist carrier's argument that the case was not properly commenced against Mr. Grinder. To support his argument, Mr. Liput cites *Sparks v. Metropolitan Government of Nashville and Davidson County*, 771 S.W.2d 430 (Tenn. Ct. App. 1989), which held that:

> Where by promises or appearances one party is induced to believe that the other party is going to pay a claim or otherwise satisfy the claims of the first party, and in reliance on that representation the first party delays filing suit within the applicable statute of limitations, the party making the representations may be estopped to raise the statute of limitations as a defense.

*Id.* at 433. From our review of the record, however, Mr. Liput likewise failed to raise this argument in the trial court in response to the Uninsured Motorist carrier's motion for summary judgment. Thus, Mr. Liput is barred from arguing equitable estoppel on appeal. *See Powell*, 312 S.W.3d at 511; *see also* Tenn. Civ. P. R. 8.03 (stating that estoppel is an affirmative defense that must be plead in the trial court). Because Mr. Liput is barred from arguing the issue of equitable estoppel on appeal, any factual allegations solely regarding equitable estoppel are not material to the issues properly raised in this case. Further, nothing in the record supports Mr. Liput's claims regarding estoppel other than the bare assertions of counsel. It is well settled that statements of counsel are not evidence. *See Dayhoff v. Cathey*, No. W2011-02498-COA-R3-JV, 2012 WL 5378090, at *2 (Tenn. Ct. App. Nov. 1, 2012) (citing *Metro. Gov't of Nashville & Davidson Co. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977)). Thus, the facts alleged to be in dispute by Mr. Liput are not material, and, therefore, are not a bar to summary judgment in this case. In addition, we have independently reviewed the facts in this case concerning the issues properly raised in this appeal. From our review, we discern no other material facts in dispute. Therefore, factual disputes are not a bar

to the grant of summary judgment in this case.

## B. Summary Judgment

We next consider whether the trial court, finding no material facts in dispute, properly granted summary judgment in favor of the Uninsured Motorist carrier on the ground that Mr. Liput failed to properly commence litigation against the alleged tortfeasor, Mr. Grinder, within the applicable statute of limitations. Because neither Mr. Grinder, nor his estate, were ever served, the trial court concluded that the claim against the Uninsured Motorist carrier was likewise barred. In reaching this conclusion, the trial court relied on ***Webb v. Werner***, 163 S.W.3d 716 (Tenn. Ct. App. 2004), which held that an uninsured motorist carrier may not be found liable when the plaintiff fails to properly commence the action against the alleged tortfeasor. The trial court in ***Webb*** dismissed the case against the uninsured motorist carrier because the plaintiff had failed to serve the alleged tortfeasor within the applicable statute of limitations. Rule 3 of the Tennessee Rules of Civil Procedure provides that:

> All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 30 days or is not served within 30 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

The plaintiff in ***Webb*** caused process to be issued to the alleged tortfeasor, but was unable to serve the tortfeasor at his last known address. The plaintiff did not continue the action by obtaining new process and subsequently made no attempt to serve the tortfeasor until twenty-two months later, which was after the expiration of the statute of limitations. The uninsured motorist carrier filed a motion for summary judgment, arguing that it could not be liable because the plaintiff was barred from establishing the legal liability of the alleged tortfeasor due to the expiration of the statute of limitations. The trial court agreed and granted summary judgment in favor of the uninsured motorist carrier, dismissing the case.

The Court of Appeals affirmed the dismissal. Relying on ***Winters v. Jones***, 932 S.W.2d 464 (Tenn. Ct. App. 1996), the Court held that:

> A plaintiff who fails to establish legal liability against a defendant tortfeasor cannot impose liability upon her uninsured motorist carrier for the acts of that same tortfeasor . . . Thus, when through inattention or neglect a plaintiff allows her cause of action against the tortfeasor to lapse, she is precluded from obtaining a recovery from the insurer as well.

*Webb*, 163 S.W.3d at 718 (quoting *Winters*, 932 S.W.2d at 465–66 (citations omitted)). In *Webb*, by the time the alleged tortfeasor had been served, the applicable statute of limitations had expired. Because service was not properly accomplished by other means, and was not otherwise excused by operation of law, the *Webb* Court concluded that the case was not properly commenced against the alleged tortfeasor. Without properly commencing the case against the tortfeasor, within the applicable statute of limitations, no liability against the uninsured motorist carrier could be imposed. Thus, in order to impose liability on an uninsured motorist carrier, such as the Appellee in this case, the plaintiff must not only serve the uninsured motorist carrier, but must also properly serve the alleged tortfeasor within the applicable statute of limitations. Accordingly, the Uninsured Motorist carrier in this case argues that the trial court correctly dismissed the case against it because the case was never properly commenced through service of process upon Mr. Grinder.

The foregoing analysis notwithstanding, the question of proper service and commencement of the case against Mr. Grinder is complicated by the fact that Mr. Grinder died prior to the filing of the complaint in this case. Mr. Grinder's death, however, did not abate Mr. Liput's cause of action against him. Tennessee Code Annotated Section 20-5-103, known as the "Survival Statute, " was originally enacted in 1935 and provides that:

> In all cases where a person commits a tortious or wrongful act causing injury or death to another, or property damage, and the person committing the wrongful act dies before suit is instituted to recover damages, the death of that person shall not abate any cause of action that the plaintiff would have otherwise had, but the cause of action shall survive and may be prosecuted against the personal representative of the tort-feasor or wrongdoer.

Tenn. Code Ann. §20-5-103(a). Thus, the death of a tortfeasor will not terminate a cause of action against him or her. Operation of the Survival Statute, however, does not create a new and independent cause of action, but "merely preserve[s] the cause of action that belonged to the person before the one who caused the injury died." *Goins v. Coulter*, 206 S.W.2d 379, 380 (Tenn. 1947) (citing *Whaley v. Catlett*, 53 S.W. 131, 133 (Tenn. 1899)). The Tennessee Supreme Court has held that, because the statute provides the exclusive remedy and steps to

-8-

be followed when such circumstances arise, the steps "must be strictly followed." ***Brooks v. Garner***, 254 S.W.2d 736, 737 (Tenn. 1953). Accordingly, an action preserved by this statute "may only be instituted against the personal representative of the tort-feasor." ***Goss v. Hutchins***, 751 S.W.2d 821, 824 (Tenn. 1988) (citing ***Brooks***, 254 S.W.2d at 737). Thus, in order to comply with the rule expressed in ***Webb***, as well as the mandates of the Survival Statute, Mr. Liput was required to serve Mr. Grinder's personal representative with process prior to the expiration of the statute of limitations. We next turn to consider the applicable statute of limitations in this case.

In the case-at-bar, the complaint alleges that the tortious conduct occurred on November 10, 2009. Generally, a plaintiff has one year to file a complaint for personal injury. *See* Tenn. Code Ann. 28-3-104(a)(1). By operation of law, however, the statute of limitations is tolled by the death of Mr. Grinder. According to Tennessee Code Annotated Section 28-1-110:

> The time between the death of a person and the grant of letters testamentary or of administration on such person's estate, not exceeding six (6) months, and the six (6) months within which a personal representative is exempt from suit, is not to be taken as a part of the time limited for commencing actions which lie against the personal representative.

"This Section has the effect of suspending, or tolling, the statute of limitations for that period of time between the death of a person and the appointment of a representative of his estate, up to a period of six months." ***Carpenter v. Johnson***, 514 S.W.2d 868, 869 (Tenn. 1974).

In his brief, Mr. Liput alleges that a material factual dispute exists as to whether an estate was ever initiated for Mr. Grinder. However, nothing in the record suggests that an estate was ever opened for Mr. Grinder. Because the Uninsured Motorist carrier set forth a properly supported motion for summary judgment, "[t]he burden of production then shifted to [Mr. Liput] to show that a genuine issue of material fact exists." ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 5 (Tenn. 2008) (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993)). In order to meet this burden, Mr. Liput must "set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. Mr. Liput failed to submit any evidence showing that an estate was ever established for Mr. Grinder. There is also no evidence to suggest that the opening of Mr. Grinder's estate was delayed in an effort to avoid this lawsuit. Although Mr. Liput filed a suggestion of death, in which he moved the Court to appoint a personal representative, the motion was not set for hearing and there is nothing to indicate that a representative was ever appointed. *See* Tenn. Code Ann. § 30-1-109; *see also* ***Estate of Russell v. Snow***, 829 S.W.2d 136, 138 (Tenn.1992) (holding that a plaintiff is

entitled to have appointed an administrator ad litem since the plaintiff's right to pursue his or her action against a deceased tortfeasor is dependent upon such appointment). Accordingly, from the totality of the circumstances, we must conclude that Mr. Lupit failed to meet his burden of proof in this regard.

Moreover, any dispute regarding whether an estate was ever established on behalf of Mr. Grinder is immaterial to the issue in this case. The issue is not whether an estate was properly established, but whether Mr. Grinder's personal representative was served with process within the applicable statute of limitations. Giving Mr. Liput the benefit of all reasonable inferences in his favor, the one-year statute of limitations was tolled for the maximum allowance of six months from the date of Mr. Grinder's death, July 14, 2010. On July 14, 2010, 118 days remained in the one-year personal injury statute of limitations. Thus, when the tolling period ended six months later, on January 14, 2011, Mr. Liput had until May 12, 2011 to force the appointment of a personal representative and serve him or her with service of process. It is undisputed, however, that Mr. Liput failed to ever serve any personal representative for Mr. Grinder's estate, regardless of whether a personal representative was ever appointed. In addition, it is undisputed that Mr. Liput failed to obtain issuance of new process within one year of the original issuance, as required by Rule 3 of the Tennessee Rules of Civil Procedure to maintain his claim. Thus, Mr. Liput's claim against the Uninsured Motorist carrier is barred by the rule expressed in *Webb* unless service was executed in another manner or excused by other means. We next turn to address Mr. Liput's arguments that service was accomplished by other means or otherwise excused by the Uninsured Motorist carrier's failure to properly raise the issue in the trial court.

### I. Uninsured Motorist Statute

Mr. Liput first argues that service upon the Uninsured Motorist carrier was sufficient pursuant to Tennessee Code Annotated Section 56-7-1206, which is known as the "Uninsured Motorist Statute." Thus, Mr. Liput argues that his case was properly commenced through his proper and timely service on the Uninsured Motorist carrier. The Uninsured Motorist Statute provides, in pertinent part:

> In the event that service of process against the uninsured motorist, which was issued to the motorist's last known address, is returned by the sheriff or other process server marked, "Not to be found in my county," or words to that effect, or if service of process is being made upon the secretary of state for a nonresident uninsured motorist and the registered notice to the last known address is returned without service on the uninsured motorist, the service of process against the uninsured motorist

carrier, pursuant to this section, shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in the case.

Tenn. Code Ann. § 56-7-1206(d).

It is undisputed that service of process was properly and timely served on the Uninsured Motorist carrier. In addition, it is undisputed that Mr. Grinder was deceased at the time Mr. Liput attempted to accomplish service. Mr. Liput, therefore, argues that the suit was properly commenced by serving only the Uninsured Motorist carrier because service of process was issued to Mr. Grinder at his last known address and he was unable to be served. To support his argument, Mr. Liput relies on the case of **Brewer v. Richardson**, 893 S.W.2d 935 (Tenn. 1995). In **Brewer**, the Tennessee Supreme Court was faced with a similar question of whether liability could be imposed upon an uninsured motorist carrier in the absence of service of process on the alleged tortfeasor. The Tennessee Supreme Court, relying on the particular facts in that case, concluded that it could. The Tennessee Supreme Court explained the purpose of Tennessee Code Annotated Section 56-7-1206(d), stating:

> [I]t is clear that the legislature intended to allow plaintiffs to proceed directly against uninsured motorist carriers because Senator Robert T. Byrd, the sponsor of the bill, stated in the debates before the third and final reading that "this bill will allow someone [after service of process has been returned unserved] to proceed directly against the uninsured motorist carrier." Senate Tape # 80 (April 28, 1975). Therefore, when the language of § 56-7-1206(d) is read in light of . . . the bill's legislative history, it is beyond question that in enacting the statute the legislature intended that a plaintiff be allowed to sue the uninsured motorist carrier directly if he is unable to obtain service of process over the uninsured motorist defendant.

**Brewer**, 893 S.W.2d at 938. The Tennessee Supreme Court further cited the case of **Lady v. Kregger**, 747 S.W.2d 342 (Tenn. Ct. App. 1987), which held that:

> "[T]he intention of the Legislature in enacting T.C.A. § 56-7-1206 was to provide an efficient procedure whereby the plaintiff could obtain complete relief when injured by an uninsured motorist. Subsection (d) is the procedure required to perfect a direct action against the uninsured motorist carrier when the whereabouts of the alleged uninsured motorist are unknown."

*Lady*, 747 S.W.2d at 345. Thus, Mr. Liput argues that, because he was "unable to obtain service of process over [Mr. Grinder,]" *Brewer*, 893 S.W.2d at 938, he properly availed himself of the procedure outlined in the Uninsured Motorist Statute to "perfect a direct action against the uninsured motorist carrier[.]" *Lady*, 747 S.W.2d at 345.

The Uninsured Motorist carrier, however, argues that the direct action procedure in the Uninsured Motorist Statute was not triggered, and, therefore, Mr. Liput may not rely solely on service on the Uninsured Motorist carrier to perfect his action. According to the plain language of the Uninsured Motorist Statute, "service of process against the uninsured motorist carrier . . . shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in the case" only when service of process against the alleged tortfeasor motorist "is returned . . . 'Not to be found in my county,' or words to that effect." Tenn. Code Ann. § 56-7-1206(d). Indeed, in *Brewer*, the case relied on by Mr. Liput, the Supreme Court noted that the summons at issue "was returned with the notation 'not to be found,'" prior to concluding that the plaintiff could take advantage of the direct action procedure available through the Uninsured Motorist Statute. *See Brewer*, 893 S.W.2d at 938–39.

We agree that return of the summons with the notation "not to be found" is required to trigger the direct action procedure pursuant to Tennessee Code Annotated Section 56-7-1206(d). This Court was recently faced with a similar issue in *Novack v. Fowler*, No. W2011-01371-COA-R9-CV, 2012 WL 403881 (Tenn. Ct. App. Feb. 9, 2012). *Novack* involved the operation of Tennessee Code Annotated Section 56-7-1104, which requires a defendant's insurance company to provide the plaintiff with information regarding the last known address of the defendant. The statute provides, in pertinent part:

> Upon a sheriff's return of "not to be found" within the particular county, or upon the secretary of state being unable to complete process upon the defendant or defendants, the plaintiff may serve demand notice upon the liability insurance carrier to reveal the location and whereabouts of the defendant automobile owner or operator.

Tenn. Code Ann. § 56-7-1104(a).

In *Novack*, the plaintiff contacted the defendant's insurance provider to obtain the defendant's last known address. *Novack*, 2012 WL 403881, at *1. The plaintiff attempted to serve the defendant at the address on numerous occasions without success. Ultimately, the plaintiff served the actual occupant of the home at the last known address, the defendant's father. The actual defendant was never served. The original summons was returned to the court, but did not contain the notation "not to be found." The defendant filed a motion for

summary judgment, arguing that service of process had never been accomplished and that the case was, therefore, not properly commenced pursuant to Rule 3 of the Tennessee Rules of Civil Procedure. *Id.* at \*2. The trial court denied the motion and an interlocutory appeal followed. *Id.* at \*3. On appeal, the plaintiff argued that Tennessee Code Annotated Section 56-7-1104(a) placed an affirmative duty on the defendant's insurance carrier to inform the plaintiff of the defendant's whereabouts. *Novack*, 2012 WL 403881, at \*8. This Court disagreed, however, and held that the duties pursuant to Tennessee Code Annotated Section 56-7-1104(a) were not triggered because the summons at issue was not returned "not to be found." According to the Court:

> Tennessee Code Annotated Section 56-7-1104 makes clear that the obligation to inform plaintiff's counsel of the defendant's address is only triggered when the summons has been returned "not to be found." Accordingly, the obligation was not triggered in this case.

*Novack*, 2012 WL 403881, at \*9.

Likewise, in this case, Tennessee Code Annotated Section 56-7-1206(d) requires that the summons be "returned . . . 'Not to be found in my county,' or words to that effect." Thus, in order to trigger the statute allowing a suit to be commenced directly against an uninsured motorist carrier, the summons must be returned with some indication that the defendant was "not to be found." However, from our review of the only summons contained in the record, which is attached to the Uninsured Motorist carrier's motion for summary judgment, nothing indicates that service was either attempted or accomplished on anyone related to Mr. Grinder. Unlike the summons in *Brewer*, the summons issued to Mr. Grinder's last known address was not returned "Not to be found," nor did the summons contain any other indicia of attempted service. The summons at issue includes a place where the sheriff serving the summons is to indicate the date in which he or she received the summons, as well as a signature line. Neither the date nor the name of any sheriff is included on the summons in the record. Based on the evidence, we conclude that the procedure, in Tennessee Code Annotated Section 56-7-1206(d), allowing a plaintiff to sue an uninsured motorist carrier directly was not triggered in this case. Thus, Mr. Liput's service on the Uninsured Motorist carrier in this case was not sufficient to properly commence this action.

## II. Waiver

Mr. Liput next argues that the Uninsured Motorist carrier waived its arguments by its failure to properly plead the issues of lack of service of process and lack of capacity. Rule 8.03 of the Tennessee Rules of Civil Procedure governs affirmative defenses, such as

-13-

insufficiency of service of process and provides that:

> In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, comparative fault (including the identity or description of any other alleged tortfeasors), discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, statute of repose, waiver, workers' compensation immunity, and any other matter constituting an affirmative defense.

This Court has held that insufficiency of service of process is likewise an affirmative defense pursuant to Rule 8.03. *See Faulks v. Crowder*, 99 S.W.3d 116, 125 (Tenn. Ct. App. 2003). According to this Court:

> As a general rule, defects in process, service of process, and return of service may be waived. The Tennessee Rules of Civil Procedure expressly state that where the issue is not raised properly, the defendant waives the objection. The failure of a defendant to challenge insufficiency of process in accordance with Rule 8.03 will constitute a waiver of the matter raised in a motion. *Barker v. Heekin Can Co.*, 804 S.W.2d 442 (Tenn. 1991), *accord*: *Goss v. Hutchins*, 751 S.W.2d 821 (Tenn. 1988).It is also generally held that a defendant may also, by his conduct, be estopped to object that proper service was not made. *See generally*, 72 C.J.S. Process § 99 (1987); 108 ALR Fed. 887 (19[92] ). Such conduct may include participating in discovery, *Martin v. Mills*, 138 F.R.D. 151, 153 (S.D. Ga.1991); *Federal Deposit Insurance Corp. v. Denson*, 139 F.R.D. 346, 348 (S.D. Miss.1990), in addition to failing to raise the issue of insufficiency of service clearly or with the necessary specificity. *See Barker*[, 804 S.W.2d] at 443, and *Green v. Mapco Petroleum, Inc.*, 133 F.R.D. 506 (W.D. Tenn. 1990).

*Faulks*, 99 S.W.3d at 125.

Although we agree that the affirmative defense of sufficiency of service of process may be waived, we decline to find it waived in this case. First, the Uninsured Motorist carrier argues that it has no standing to challenge the service of process against another

defendant. Standing is a judge-made doctrine used to determine whether a party is entitled to judicial relief. ***Knierim v. Leatherwood***, 542 S.W.2d 806, 808 (Tenn.1976). It requires the court to decide whether the party has a sufficiently personal stake in the outcome of the controversy to warrant the exercise of the court's power on its behalf. ***Browning–Ferris Indus., Inc. v. City of Oak Ridge***, 644 S.W.2d 400, 402 (Tenn. Ct. App. 1982). The Uninsured Motorist carrier has not alleged that it was not properly and timely served with process in this case. Indeed, it is undisputed that Mr. Liput properly effectuated service on the Uninsured Motorist carrier. Instead, the Uninsured Motorist carrier is simply arguing that Mr. Liput may not impose liability against it because Mr. Liput allowed his claim against Mr. Grinder to lapse. *See* ***Webb***, 163 S.W.3d at 718. Thus, the Uninsured Motorist carrier is not claiming that service was insufficient in this case, but rather argues that, because of the lapse of Mr. Liput's claim against Mr. Grinder, it simply cannot be liable. Indeed, in the seminal case on this issue, ***Webb v. Werner***, the uninsured motorist defendant did not raise the failure to properly commence the action against the alleged tortfeasor in a responsive pleading, but in a motion for summary judgment, much like in this case. ***Id.*** at 717. Nothing in ***Webb*** suggests that to do so was error.

Even if the Uninsured Motorist carrier's argument could properly be deemed a service of process affirmative defense, Mr. Liput still cannot rely on waiver based on the facts in the record. This case presents a somewhat similar circumstance to a case recently considered by this Court, ***Van Zyll v. Mitchell***, No. E2011-00489-COA-R3-CV, 2012 WL 2899065 (Tenn. Ct. App. July 17, 2012). In ***Van Zyll***, the plaintiffs failed to ever effectuate service on the defendant. Some years after the litigation began, the defendant wrote a letter to the trial court indicating that he had no notice of the proceedings. ***Id.*** at *3. The defendant later entered an appearance and filed a motion to dismiss, arguing that there was no service of process. The motion, however, was not set for hearing or otherwise brought to the attention of the trial court. The trial court eventually dismissed the case based on the plaintiffs' failure to serve the defendant. ***Id.*** at *4. The plaintiffs argued on appeal, however, that the issue was waived due to the defendant's failure to allege insufficient service of process in his responsive pleading. The Court held: (1) the defendant had properly alleged insufficient service of process in a letter to the trial judge, and (2) the plaintiffs were not entitled to rely on waiver because they had knowledge that they never accomplished service on the defendant. ***Id.*** at *7. According to the Court:

> In contrast to ***Faulks***, the [p]laintiffs in the case at bar can hardly claim that they were sandbagged. They knew that they had not effected service of process on [the defendant]; there was no completed return of process in the file.

***Id.*** Likewise in this case, Mr. Liput cannot claim that he was not aware that Mr. Grinder was

not served with process. First, there is no completed return of process in the record. In addition, nothing in the record suggests that Mr. Liput ever attempted to serve Mr. Grinder with process. Accordingly, Mr. Liput cannot rely on the Uninsured Motorist carrier's alleged waiver to defeat its argument.

In addition to his argument regarding Rule 8.03, Mr. Liput also argues that the Uninsured Motorist carrier's defense is barred by Rule 9.01 of the Tennessee Rules of Civil Procedure. Rule 9.01 provides:

> It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or to be sued in a representative capacity, he or she shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

Thus, a party wishing to raise an issue as to capacity must do so by "specific negative averment." Black's Law Dictionary defines capacity as: "The ability of a particular individual or entity to use, or to be brought into, the courts of a forum." Black's Law Dictionary 188 (5th ed. 1979) (citing *Johnson v. Helicopter & Airplane Services Corp.*, 404 F.Supp. 726, 729 (D.C. Md. 1975)).

To support this argument, Mr. Liput relies on the Tennessee Supreme Court case of *Goss v. Hutchins*, 751 S.W.2d 821 (Tenn. 1988), which also involved a suit against a deceased tortfeasor. In *Goss*, the plaintiffs sued the estate of a deceased tortfeasor after a prior nonsuit. In the prior case, the summons was served on the executor of the estate, who was also named in the body of the complaint. The estate filed an answer in which it asserted the defenses of failure to state a claim, insufficient service of process, and lack of jurisdiction. After the plaintiffs nonsuited, they timely re-filed their complaint, again against the estate, and again serving the executor of the estate. The estate filed a motion to dismiss, arguing that a suit may not be brought against an estate, but only against its personal representative. *See Brooks*, 254 S.W.2d at 737. In response, plaintiffs filed a motion to amend their complaint. The trial court granted the motion to amend and denied the motion for summary judgment. The case eventually went to trial and the plaintiffs were awarded damages. The Court of Appeals reversed, holding that the original suit was a nullity that could not be revived through the savings statute because the plaintiffs sued the estate, rather

than the personal representative. ***Goss***, 751 S.W.2d at 821.

On appeal to the Tennessee Supreme Court, the defendant estate again argued that the case was a nullity because the proper defendant was not served within the applicable statute of limitations. The plaintiff countered this argument with a waiver argument pursuant to Rule 9.01. The Tennessee Supreme Court agreed that the estate was not a proper party to the suit, but held the amendment related back to the original filing of the suit because the personal representative was clearly named in the body of the original complaint and was served with process. ***Id.*** at 824. Therefore, the case was properly commenced against the personal representative and survived pursuant to the savings statute. ***Id.*** at 825. The Court went on to hold, in *dicta*, however, that even if the case had not properly been commenced against the personal representative, the defendant had waived that argument by failure to comply with Rule 9.01 in the original suit. ***Id.***; *see also* ***Bond v. Watts***, No. 02A01-9311-CV-00262, 1994 WL 652865, *3 (Tenn. Ct. App. Nov. 22, 1994) (noting that this analysis in ***Goss*** is merely dicta). According to the ***Goss*** Court:

> To raise the issue of lack of legal existence or capacity in this case, it was necessary that defendant answering on behalf of the representative of the decedent's estate, assert in clear and unmistakable English, that has a single meaning, to-wit: that no party having the legal capacity to represent the decedent has been sued or served with process. The fact that such a specific negative averment will likely result in a prompt curative amendment by plaintiff does not reduce the stringency of the rule.

***Goss***, 751 S.W.2d at 826. Because the estate failed to raise the defense of lack of capacity specifically, the Court held that such argument would have been waived. ***Id.*** at 825–26 ("Thus, we hold that defendant did not raise by motion or by specific negative averment the issue of the legal existence of the estate in the first action. Therefore, defendant waived that issue.").

We note, however, that, as previously discussed, the Uninsured Motorist carrier in this case has not objected to its capacity to be sued, but instead has argued that, because Mr. Liput has allowed his claim against Mr. Grinder to lapse, the court cannot impose liability on the Uninsured Motorist carrier. Unlike the "estate" in ***Goss***, which argued that it was not a legal entity that could be sued, the Uninsured Motorist carrier does not contend that Mr. Liput did not have the right to sue it. Instead, the Uninsured Motorist carrier merely contends that having failed to properly and timely serve either Mr. Grinder, or his personal representative, the Uninsured Motorist carrier may not be held liable for damages resulting

from Mr. Grinder's alleged negligence. Additionally, in neither of the leading cases on the liability of an uninsured motorist carrier after the claim against the tortfeasor has lapsed, has the Court characterized the uninsured motorist carrier's argument as one of "capacity," nor do those cases cite Rule 9.01. *See Webb*, 163 S.W.3d at 717–20; *Winters*, 932 S.W.2d at 465–66. Mr. Liput does not cite, nor has our research revealed, any case in which this doctrine is characterized as one of "capacity." Accordingly, we decline to hold that an argument pursuant to the rule expressed in *Webb* is one of "capacity" that must be specifically averred pursuant to Rule 9.01.

Even if this were a proper capacity argument, we do not agree that Rule 9.01 prevents the Uninsured Motorist carrier from raising this issue in its motion for summary judgment. In a case involving a somewhat similar chronology to this case, this Court held that the defendant railroad had not waived its capacity argument by the failure to specifically aver the lack of capacity in its answer. *See McCormick v. Illinois Cent. R. Co.*, No. W2008-00902-COA-R9-CV, 2009 WL 1392575, at *8 (Tenn. Ct. App. May 19, 2009). In *McCormick*, the plaintiff sued the defendant railroad for personal injuries relating to his employment. The defendant railroad answered the complaint and served discovery requests on the plaintiff. When the plaintiff did not respond, the railroad filed a motion to dismiss. Subsequently, the plaintiff's counsel filed a suggestion of death in which it stated that the plaintiff had died and requested that the plaintiff's wife be substituted as the party plaintiff. The railroad subsequently filed a motion to dismiss, arguing that only an employee of the railroad or the personal representative of an employee's estate had capacity to sue the railroad. *Id.* at *1. Ultimately, the trial court allowed substitution of plaintiff's wife as the party plaintiff. An interlocutory appeal followed. *Id.* at *2.

On appeal, the newly substituted plaintiff argued that the railroad had waived its capacity argument pursuant to 9.01 by failing to include specific negative averments questioning the capacity of the plaintiff in its answer. The Court of Appeals noted that the motion to dismiss filed in the case clearly averred that "Plaintiff does not have the capacity to sue." Thus, the Court concluded that the railroad had properly complied with the requirements of Rule 9.01. *Id.* at *7. The Court further held that the railroad did not waive its argument by waiting to raise the issue in a post-answer motion, as the plaintiff's death was not known to the railroad until after the answer was filed. According to the Court:

> We find it inequitable to require [r]ailroad to raise, either in its answer or a pre-answer motion, this defense which, based upon the plaintiff's misrepresentation-either intentional or negligent-could not have been known to [r]ailroad at the time its answer or pre-answer motion was required. Additionally, we find that such defense is not waived merely because [r]ailroad

filed a motion to dismiss rather than an amended answer. Instead, we find that an objection based on the fact that the plaintiff was deceased when the complaint was filed can be raised at any time during the proceedings, in any appropriate manner, and such objection " 'stops the cause at whatever stage it may be, whenever made known to the court.'

*Id.* at *8 (citation omitted).

In this case, the Uninsured Motorist carrier likewise raised the issue of Mr. Grinder's death in a post-answer motion. The memorandum of law accompanying the motion avers that:

With limited exceptions specifically outlined in statutory law, in order for a plaintiff to recover damages from his uninsured/underinsured (UM/UIM) carrier, the plaintiff must achieve timely service of process and otherwise establish the legal liability of the alleged uninsured/underinsured named defendant. As of the date of the filing of this Memorandum, Plaintiff has not properly "commenced" his action against the named Defendant sufficient to satisfy Rule 3 of the Tennessee Rules of Civil Procedure and evade the one (1) year personal injury statute of limitations of Tennessee Code Annotated Section 28-3-104. Since the statute of limitations against the named Defendant has expired, Plaintiffs claim against Unnamed Defendant is likewise extinguished.

Thus, the Uninsured Motorist carrier clearly raised this issue by "specific negative averment." Likewise, in this case, nothing in the record suggests that the Uninsured Motorist carrier knew of Mr. Grinder's death until the suggestion of death was filed on March 31, 2011. The Uninsured Motorist carrier, however, filed its answer on January 6, 2011, nearly three months prior to the filing of the suggestion of death. Although Mr. Liput seems to suggest that the Uninsured Motorist carrier had some superior knowledge of Mr. Grinder's death, the record does not support that contention. Indeed, it is important to note that the Uninsured Motorist carrier is Mr. Liput's insurance carrier, not Mr. Grinder's. Mr. Liput had previously settled with Mr. Grinder's insurance carrier. Therefore, the Uninsured Motorist carrier had no relationship with Mr. Grinder that would have put it on notice of Mr. Grinder's death. Because nothing in the record suggests that the Uninsured Motorist carrier knew of Mr. Grinder's death prior to the filing of the suggestion of death, we, like the Court in ***McCormick***, must conclude that the Uninsured Motorist carrier did not waive its

argument by failing to include the argument in its responsive pleading.

### III. Late Filed Answer

Mr. Liput's final argument is  that the Uninsured Motorist carrier is barred from asserting any claims or defenses due to the late filing of its answer. Under Rule 12.01 of the Tennessee Rules of Civil Procedure, a defendant has thirty days from the service of the summons and the complaint to file an answer. The complaint in this case was filed on November 5, 2010 and the summons was served on the Uninsured Motorist carrier on December 6, 2010. Accordingly, the Uninsured Motorist carrier's answer, which was filed on January 6, 2011, was one day late. However, as with many of his other arguments on appeal, Mr. Liput failed to make this argument to the trial court. Therefore, the issue is waived. *See **Powell***, 312 S.W.3d at 511.

### V. Conclusion

The judgment of the Circuit Court of Hardin County is affirmed and this cause is remanded to the trial court for dismissal. Costs are taxed to Appellant Richard Liput, and his surety.

_____
J. STEVEN STAFFORD, JUDGE