IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 22, 2017 Session

## ANNIE DAVIS, ET AL. v. GRANGE MUTUAL CASUALTY GROUP, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 15-C-1077     Joseph P. Binkley, Jr., Judge**

_____

### No. M2016-02239-COA-R3-CV

_____

This case involves the interplay between the statute of limitations, Rule 3 of the Tennessee Rules of Civil Procedure, and Tennessee Code Annotated section 56-7-1206(d), allowing direct actions against uninsured motorist insurance carriers. The trial court granted the defendant uninsured motorist insurance carrier's motion to dismiss. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J.,M.S., and RICHARD H. DINKINS, J., joined.

Jonathan E. Richardson and Karl E. Pulley, Nashville, Tennessee, for the appellants, Annie Davis and William Davis.

C. Benton Patton and Jennifer P. Ogletree, Nashville, Tennessee, for the appellee, Grange Mutual Casualty Group and Steven G. Hobock.

## OPINION

### Background

Plaintiffs/Appellants Annie and William Davis ("Appellants") filed a complaint on March 20, 2015, alleging that they suffered injuries in a motor vehicle accident that occurred on March 21, 2014. In their complaint, the Appellants name Steven G. Hobock, and their purported uninsured/underinsured motorist insurance carrier, Grange Mutual Casualty Group ("Grange"), as defendants.

Prior to filing their complaint, Appellants had contact with Grange regarding a possible settlement.[1] After filing the complaint, however, the case languished with no activity for over a year. Indeed, it is undisputed that Appellants' did not cause a summons to issue to either defendant until April 19, 2016. On April 21, 2016, the summons issued to Mr. Hobock at his last known address was eventually returned by the Davidson County Sheriff stating that "Steven Hoback [sic] is not to be found in my county."

On April 25, 2016, the trial court *sua sponte* dismissed the action for failure to prosecute. Appellants then filed a "Motion to Set Aside Final Order/Reinstatement of Cause of Action"[2] on May 24, 2016. The same day, the Commissioner of Insurance returned the April 19, 2016 summons issued to Grange unserved. Appellants caused another summons to be issued to Grange on June 6, 2016, to be served by certified mail. A second summons was also caused to be issued to Mr. Hobock on June 7, 2016. Mr. Hobock's summons was returned unserved on June 14, 2016, indicating that Mr. Hobock died in early 2015. The trial court granted the Appellants' motion to set aside the order of dismissal on July 12, 2016.

On July 7, 2016, Trustgard Insurance Company ("Appellee") filed a notice of limited/special appearance asserting that Appellants incorrectly identified Grange as Appellants' uninsured motorist carrier and that Appellee was instead the appropriate entity.[3] Appellee then filed a motion to dismiss the subject action for insufficient service of process and for failure to comply with Rule 3 of the Tennessee Rules of Civil Procedure. Appellee argued that because Appellants did not issue any summons to any defendant until April 19, 2016, they could not rely on the original filing date to toll the one-year statute of limitations applicable to claims for personal injuries. Appellee also asserted that because the statute of limitations had expired against Mr. Hobock, the

---

[1] Appellants assert in their brief that, in addition to a settlement offer, Grange also paid for property damage and some out of pocket expenses. As such, a claim for property damage is not at issue in this appeal.

[2] Appellants cite Rule 60 of the Tennessee Rules of Civil Procedure for the basis of this motion, which rule involves relief from final judgments. Appellants' motion was properly brought under Rule 59.04, however, as it was filed within thirty days after the entry of judgment. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012) (characterizing a Rule 60.02 motion as one where a party "seek[s] relief ... more than thirty days after entry of a final judgment"); *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977) ("The function of [Rule 60] is to give relief from final judgments; Rule 59 ... is the appropriate remedy for asserting alleged errors affecting a judgment which has not yet become final."); *Stricklin v. Stricklin*, 490 S.W.3d 8, 18 (Tenn. Ct. App. 2015) ("Because [father's] motion was filed within thirty days from the entry of the ... order, we regard his motion as a request for relief under Rule 59.") (citing *Campbell*, 555 S.W.2d at 112); *see also Ferguson v. Brown*, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008) ("Rule 60.02 affords a party a means to seek relief from a final, non-appealable judgment."). *But see Smith v. Haley*, No. E2000-01203-COA-R3-CV, 2001 WL 208515, at *5 (Tenn. Ct. App. Mar. 2, 2001) ("[Rule 59.04] applies to final judgments."). This error has no effect on this appeal.

[3] In this appeal, Appellee does not assert that Appellants' misidentification is fatal to Appellants' action.

alleged tortfeasor, the action against it as Appellants' uninsured motorist insurance carrier was also barred.

The trial court granted Appellee's motion to dismiss on September 22, 2016. Specifically, the trial court found that it is undisputed that Appellants did not issue summonses to Appellee or Mr. Hobock until April 19, 2016, more than one year after the filing of the complaint; therefore, Appellants could not rely on the original filing date of their complaint to toll the one-year statute of limitations applicable to this action. Accordingly, the trial court dismissed the case against Mr. Hobock for failure to comply with Rule 3 and additionally dismissed the case against Appellee because Appellants failed to establish liability against the alleged tortfeasor as required by Tennessee law. Appellants thereafter filed a motion to reconsider, which the trial court denied.

## Issue Presented

The sole issue, as we perceive it, is whether the trial court erred in dismissing the case for failure to timely issue service of process, resulting in the expiration of the statute of limitations.

## Standard of Review

Because this case is centered on service of process and statute of limitations issues, we will discuss the applicable standards of review in turn. Considering an appeal from a trial court's grant of a motion to dismiss for insufficiency of service of process, we view all factual allegations in the complaint as true and review the trial court's conclusions of law *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d); *Fisher v. Ankton*, No. W2016-02089-COA-R3-CV, 2017 WL 3611035, at *3 (Tenn. Ct. App. June 27, 2017) (citing *Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19 (Tenn. Ct. App. 2010)).

Motions to dismiss are governed by Rule 12.02 of the Tennessee Rules of Civil Procedure and may include motions based upon insufficient service of process or failure to state a claim upon which relief may be granted. According to Rule 12.02: "If, on a motion asserting the defense [of] failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]" Tenn. R. Civ. P. 12.02. However, "even though the trial court consider[s] matters outside the pleading, the motion [is] still properly treated as a motion to dismiss since in involves [the] issue[] of service of process." *Milton v. Etezadi*, No. E2012-00777-COA-R3-CV, 2013 WL 1870052 (Tenn. Ct. App. May 3, 2013). In other words, when ruling on motions to dismiss regarding service of process, "a trial court may properly consider matters outside the pleadings without converting the motion to one for summary judgment." *Fisher*, 2017 WL 3611035 at *3 (citing *Milton*, 2013 WL 1970052, at *3–*4).

- 3 -

The same is not true of motions to dismiss predicated on the expiration of the statute of limitations as they may be properly raised as a motion to dismiss for failure to state a claim upon which relief may be granted. *See Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 549 (Tenn. Ct. App. 2013) (citing Tenn. R. Civ. P. 12.02(6)) (holding that a motion to dismiss based upon the expiration of the statute of limitations is properly brought as a motion to dismiss for failure to state a claim upon which relief may be granted). As such, motions to dismiss raising this defense may be converted to motions for summary judgment where the trial court considers matters outside the pleadings. Determining whether to grant or deny a motion for summary judgment is a matter of law, therefore, the standard of review is *de novo,* with no presumption of correctness. **Rye v. Women's Care Center of Memphis, MPLLC,** 477 S.W.3d 235, 250 (Tenn. 2015). Thus, we must make "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." **Rye,** 477 S.W.3d at 250 (citing **Estate of Brown**, 402 S.W.3d 193, 198 (Tenn. 2013)).

Summary judgment is generally granted "only when the moving party can demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04; **Cohen v. Didier**, No. M2013-01370-COA-R3-CV, 2014 WL 4102380 (Tenn. Ct. App. Aug. 19, 2014) (citing **Hannan v. Alltel Publ'g Co.**, 270 S.W.3d 1, 5 (Tenn. 2008)). Further, a summary judgment motion is granted when "the facts and reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." **Cohen**, 2014 WL 4102380, at *4 (citing **Dick Broad. Co. of Tenn. V. Oak Ridge FM., Inc.,** 395 S.W.3d 653, 671 (Tenn. 2013)). Although the trial court considered this case only through the lens of Appellee's motion to dismiss, we conclude that under either standard, the undisputed facts establish that the trial court did not err in dismissing Appellants' cause of action against both Appellee and Mr. Hobock.

**Analysis**

I.

The subject case focuses on the overlap among the service of process requirements under Rule 3 of the Tennessee Rules of Civil Procedure, the applicable statutes of limitations involving a motor vehicle accident where one party is an underinsured/uninsured motorist, and Tennessee Code Annotated section 56-7-1206, the uninsured/underinsured motorist direct action statute. We will begin by discussing the applicable statutes of limitations.

Under Tennessee law, a personal injury action must be commenced within one year of the date the plaintiff's cause of action accrued. Tenn. Code Ann. § 28-3-104(a)(1)(A). However, actions on contracts that have not been expressly provided for are afforded a six-year statute of limitations. *See* Tenn. Code Ann. § 28-3-109(a)(3);

***Bates v. Greene***, No. W2016-01868-COA-R3-CV, 2017 WL 3206599, at \*2 (Tenn. Ct. App. July 27, 2017). In ***Bates***, this Court reaffirmed the holding that a suit against an uninsured motorist insurance carrier is ultimately an action in contract, giving rise to a six-year statute of limitations rather than the one-year statute applicable to the claims for personal injury against the tortfeasor. *See generally **Bates***, 2017 WL 3206599, at \*2 (quoting A.S. Klein, Annotation, *Automobile Insurance: time limitations as to claims based on uninsured motorist clause*, 28 A.L.R.3d 580 § 3) ("'[D]espite the necessity that the insured establish that a tort was committed by the uninsured motorist, and that injury resulted, the action is nevertheless one based upon the insurance contract, on which the liability of the insurer depends, and that the contract limitation period therefore controls.'").

Despite the fact that claims against an uninsured motorist and an uninsured motorist insurance carrier are governed by different statutes of limitations, the claims are not unconnected. Rather, it is well-settled that there can be no legal liability established against an uninsured motorist carrier without first properly commencing a claim against the tortfeasor. ***Winters v. Estate of Jones***, 932 S.W.2d 464, 465–66 (Tenn. Ct. App. 1996) ("A plaintiff who fails to establish legal liability against a defendant tortfeasor cannot impose liability upon her uninsured motorist carrier for the acts of that same tortfeasor.")). Furthermore, "if the statute of limitations ha[s] run against the uninsured *motorist,* a direct action [cannot be] maintained against the uninsured motorist *carrier*." ***Bates***, 2017 WL 3206599, at \*6 (citing ***Buck***, 2003 WL 21170328, at \*4). As such, "'when through inattention or neglect a plaintiff allows her cause of action against the tortfeasor to lapse, she is precluded from obtaining a recovery from the insurer as well.'" ***Liput v. Grinder***, 405 S.W.3d 664, 671 (Tenn. Ct. App. 2013) (quoting ***Webb v. Werner***, 163 S.W.3d 716 (Tenn. Ct. App. 2004)). Thus, to avail itself of the less stringent six-year statute of limitations provided to uninsured motorist insurance carriers, a plaintiff must first meet the requirement of properly commencing a suit against the tortfeasor. In other words, Appellants must first commence a proper claim against Mr. Hobock before invoking potential liability against the uninsured motorist insurance carrier.

Turning to the subject case, it is undisputed that Appellants filed their complaint on March 20, 2015. Because the accident allegedly occurred on March 21, 2014, the complaint against Mr. Hobock was clearly filed within the applicable statute of limitations. *See* Tenn. Code Ann. § 28-3-104(a)(1)(A). The filing alone, however, is not sufficient to toll the statute of limitations. Rather a plaintiff must also comply with Rules 3 and 4 of the Tennessee Rules of Civil Procedure. *See **McNeary v. Baptist Memorial Hosp.***, 360 S.W.3d 429, 436–37 (Tenn. Ct. App. 2011).

Rule 3 of the Tennessee Rules of Civil Procedure "outlines the requirements for commencing a lawsuit by timely filing a complaint and issuing process." ***Id.*** It states, in pertinent part,

All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of the statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year of the filing of the complaint.

Tenn. R. Civ. P. 3.01. Rule 4 of the Tennessee Rules of Civil Procedure describes the requirements necessary to obtain proper service of process on defendants. *See generally* Tenn. R. Civ. P. 4.01–4.09.

Upon a plain reading of Rule 3, it provides that "an action is commenced with the filing of a complaint, whether or not process is issued." *Stempa v. Walgreen Co.*, 70 S.W.3d 39, 42 (Tenn. Ct. App. 2001). "[T]he commencement of the lawsuit does not hinge on the issuance of summons, at least not initially" for statute of limitations purposes. *Harris v. Marriot Intern., Inc.*, No. M1999-00096-COA-R3-CV, 2001 WL 378552, at \*2 (Tenn. Ct. App. Apr. 17, 2001). Rule 3 cannot, however, be read in isolation. Rather, Rules 3 and 4 of the Tennessee Rules of Civil Procedure, should be read together because "[s]tanding alone [] Rule . . . 3 could be construed to mean that filing a complaint alone is sufficient to commence an action." *McNeary*, 360 S.W.3d at 439. Instead, the "Tennessee Rules of Civil Procedure 3 and 4 . . . also require[] service of process." *Id.* at 439. This Court has explained "that 'the term "process" in Rule 3 refers to a summons, and the word "summons" in Rule 4 is the process in Rule 3.'" *Id.* at 437 (quoting *Richards v. Newby*, No. 20, 23583, 1991 WL 163541, \* 3 (Tenn. Ct. App. Aug. 27, 1991)). Finally, Rule 3's use of the phrase "regardless of the reason" clearly shows that the "reason" process was not issued is not considered by the court. *Stempa*, 70 S.W.3d at 43. Thus, pursuant to Rule 3, "a plaintiff can rely on the initial filing of a complaint to toll the statute of limitations *so long as process is issued within one year of the filing of the complaint*." *Id.* at 44 (emphasis added).

It is undisputed that Appellants did not attempt to have summonses issued to either defendant until April 19, 2016—approximately thirteen months after they filed the original complaint. Clearly, Appellants did not comply with Rule 3 by failing to have any summons issued within one-year of filing the complaint.

Despite this fatal flaw, Appellants make a somewhat skeletal argument that "[s]ummons are often discussed as a function of the clerk of the court wherein the lawsuit is filed." *See* Tenn. R. Civ. P. 4.01 ("Upon the filing of the complaint, *the clerk of the court shall* promptly issue the required summons and cause it, with necessary copies of the complaint and summons, to be delivered for service to any person authorized to serve

process.") (emphasis added).    As we perceive it, Appellants therefore argue that they were not required to issue the summons to Mr. Hobock, but that the issuance was instead the responsibility of the clerk. Respectfully, we disagree.  First, we note that "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." ***Sneed v. Bd. of Prof'l Responsibility of Supreme Court***, 301 S.W.3d 603, 615 (Tenn. 2010). In any event, we cannot agree that the responsibility to issue summons fell to the clerk rather than Appellants. Rule 3 clearly states that "[i]f process remains unissued for 90 days or is not served within 90 days from issuance, *regardless of the reason*, the plaintiff *cannot rely upon the original commencement to toll the running of the statute of limitations*." Tenn. R. Civ. P. 3.01 (emphasis added).  Thus, "regardless of the reason[,]" if process remains unissued after filing a complaint, "'the plaintiff cannot sit idly by when confronted with such a situation.'" ***First Tennessee Bank, N.A. v. Dougherty***, 963 S.W.2d 507 (Tenn. Ct. App. 1997) (quoting ***Adams v. Carter County Mem. Hosp.***, 548 S.W.2d 307, 309 (Tenn.1977). Rather, the plaintiff must "'apply for and obtain issuance of new process'" to toll the applicable statute of limitations. ***Dougherty***, 963 S.W.2d at 509 (quoting ***Adams***, 548 S.W.2d at 309).  Accordingly, Rule 3 places the burden on the Appellants, rather than the clerk, to properly obtain issuance of process to toll the statute of limitations. This argument is therefore, respectfully, without merit.

Appellants also argue that they substantially complied with Rule 3 of the Tennessee Rules of Civil Procedure, resulting in the statute of limitations being tolled. Specifically, Appellants assert that substantial compliance was met because they: (1) negotiated with the uninsured motorist insurance carrier prior to filing suit; and (2) issued a summons to both Mr. Hobock and Appellee "near" the time set out in Rule 3. Respectfully, we cannot agree that actual notice or "near" compliance is sufficient to toll the statute of limitations in this case.

It is well-settled that the Tennessee Rules of Civil Procedure function as laws of the state, thus, plaintiffs must "*strictly comply* [with] . . . the Tennessee Rules of Civil Procedure." *See* ***Watson v. Garza***, 316 S.W.3d 589, 593 (Tenn. Ct. App. 2008); ***Wallace v. Wallace***, No. 01A01-9512-CH-00579, 1996 WL 411627, at \*2 (Tenn. Ct. App. July 24, 1996)(emphasis added).  Moreover, this Court has found "nothing in Rule 3 to suggest that substantial compliance satisfie[s] the terms of the rule." ***Slone v. Mitchell***, 205 S.W.3d 469, 473 (Tenn. Ct. App. 2005).  Furthermore, Tennessee courts "have repeatedly held that actual notice of the lawsuit is not a substitute for service of process where it is required by the Rules of Civil Procedure." ***Krogman v. Goodall***, No. M2016-01292-COA-R3-CV, 2017 WL 3769380, at \*5 (Tenn. Ct. App. Aug. 29, 2017) (citing ***Frye v. Blue Ridge Neuroscience Ctr.***, 70 S.W.3d 710, 715 (Tenn. 2002); *see also* ***City of Oak Ridge v. Levitt***, 493 S.W.3d 492, 502 (Tenn. Ct. App. 2015); ***In re Beckwith Church of Christ***, No. M2015-00085-COA-R3-CV, 2016 WL 5385853, at \*4 (Tenn. Ct. App. Sep. 23, 2016**); *Regions Bank v. Sandford***, No. M2015-02215-COA-R3-CV, 2016 WL 6778188, at \*2 (Tenn. Ct. App. Nov. 16, 2016).

Rule 3 "imposes a strict one year time frame in which process must be issued or re-issued to toll the statute of limitations." **Clark v. McClung**, No. M2003-00552-COA-R3-CV, 2003 WL 22994304, at \*5 (Tenn. Ct. App. Dec. 17, 2003) (citing **Stempa**, 70 S.W.3d at 41); **Tillman v. Haffey**, 63 S.W.3d 367 (Tenn. Ct. App.2001)). Consequently, this Court has previously held that dismissal of a claim is proper where the plaintiff allowed the statute of limitations to run by failure to strictly comply with Rule 3 and 4 of the Tennessee Rules of Civil Procedure. *See, e.g., **Liput v. Grinder***, 405 S.W.3d 664, 673 (Tenn. Ct. App. 2013); **McNeary**, 360 S.W.3d at 439; **Clark v. McClung**, 2003 WL 22994304, at \*5; **Webb v. Werner**, 163 S.W.3d 716, 721 (Tenn. Ct. App. 2004); **Ballard v. Ardenhani**, 901 S.W.2d 369, 371 (Tenn. Ct. App. 1995). As such, Appellants were required to have a summons issued to Mr. Hobock within one-year of the filing of their complaint, i.e., on or before March 20, 2016. Appellants did not even attempt to have a summons issued until thirteen months after filing their complaint; therefore, they did not strictly comply with the Rules of Tennessee Civil Procedure and consequently allowed their claim against Mr. Hobock to lapse. Without a proper claim against Mr. Hobock, Appellants claim against Appellee must fail. *See **Winters***, 932 S.W.2d at 465–66.

II.

Although Appellants failed to comply with Rules 3 and 4 of the Tennessee Rules of Civil Procedure, they argue that they were relieved from strictly complying with Rule 3 by Tennessee Code Annotated section 56-7-1206 ("Uninsured Motorist Statute"), which Appellants argue supersedes the Tennessee Rules of Civil Procedure.

Appellants center their arguments around Tennessee Code Annotated section 56-7-1205(d), which states in pertinent part:

> In the event that service of process against the uninsured motorist, which was issued to the motorist's last known address, is returned by the sheriff or other process server marked, "Not to be found in my county," or words to that effect, or if service of process is being made upon the secretary of state for a nonresident uninsured motorist and the registered notice to the last known address is returned without service on the uninsured motorist, the service of process against the uninsured motorist carrier, pursuant to this section, shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in the case.

Tenn. Code Ann. § 56-7-1206(d). The Tennessee Supreme Court explained the General Assembly's purpose in adding Tennessee Code Annotated section 56-7-1206(d) stating:

> [W]hen the language of § 56-7-1206(d) is read in light of . . . the bill's legislative history, it is beyond question that in enacting the statute the legislature intended that a plaintiff be allowed to sue the uninsured motorist

carrier directly if he is unable to obtain service of process over the uninsured motorist defendant.

***Brewer v. Richardson***, 893 S.W.2d 935, 938 (Tenn. 1995). Therefore, Appellants argue that because Mr. Hobock "was not found for service of process purposes," as Mr. Hobock was deceased and "not available for service of process with respect to this law suit," they fully complied with the Uninsured Motorist Statute and can proceed in a direct action against Appellee, as their own uninsured motorist insurance carrier.

We agree that in certain instances the Uninsured Motorist Statute relaxes the stringent requirements for service of process on uninsured motorists. In order to rely on this relaxed procedure, we have outlined two conditions required to trigger the statute: (1) "service of process upon the motorist sought to be charged is returned 'Not to be found[]'"; and (2) proper service of process on the uninsured motorist carrier pursuant to the guidelines of the statute. ***Lady v. Kregger***, 747 S.W.2d 342, 344 (Tenn. Ct. App. 1987). Once the statute is triggered, plaintiffs may "by-pass the [] Rule 3 requirement that *new* process be issued every six months or the action be refiled yearly." ***Id.*** at 345 (emphasis added). Because Appellants issued a summons to Mr. Hobock that was returned "Not to be found," Appellants assert that they were excused from complying with Rule 3 and that their claim should not have been dismissed as untimely.

We concede that the record on appeal does contain a belatedly issued summons and a return indicating that Mr. Hobock was not to be found. As such, this case can be distinguished from those cases where the plaintiff made no effort to serve the defendant tortfeasor, timely or otherwise. *See* ***Liput***, 405 S.W.3d at 675–76 (Tenn. Ct. App. 2013) (holding that section 56-7-1206(d) was not triggered where the summons issued to the defendant tortfeasor was not served on the tortfeasor nor was it returned "not to be found"). Still, we are reluctant to conclude that Appellants complied with section 56-7-106(d) when their first effort to both cause to issue and attempt to serve a summons occurs after their claim against the tortfeasor has already expired by virtue the their complete failure to even attempt to comply with Rule 3. As previously discussed, this Court has held that where "the statute of limitations ha[s] run against the uninsured *motorist,*" even *"*a direct action [cannot be] maintained against the uninsured motorist *carrier.*" ***Bates***, 2017 WL 3206599, at *6 (citing ***Buck***, 2003 WL 21170328, at *4). Indeed, our research has revealed that in every case in which this Court has allowed the plaintiff to proceed under the direct action procedure outlined by section 56-7-1206(d), the plaintiff at the very least issued a summons to the tortfeasor within one-year of the filing of the complaint. *See* ***Brewer v. Richardson***, 893 S.W.2d 935, 936, 939 (Tenn. 1995) (allowing the plaintiff to rely on section 56-7-1206(d) where a summons was issued and returned "not to be found" less than one month after the filing of the complaint); ***Bates v. Greene***, No. W2016-01868-COA-R3-CV, 2017 WL 3206599, at *2 (Tenn. Ct. App. July 27, 2017) (allowing the plaintiff to rely on section 56-7-1206(d) where a summons was issued and returned not to be found within one-year of the filing of

the complaint); ***Kirby v. Wooley***, No. E2008-00916-COA-R3-CV, 2009 WL 499539, at *7 (Tenn. Ct. App. Feb. 27, 2009) (holding that the plaintiffs met the requirements of section 56-7-1206(d) because immediately following the filing of the complaint, they issued process to the out-of-state defendant tortfeasor through the Secretary of State, which was returned indicating that the defendant was not to be found); ***Fagg v. Buettner***, No. M2007-02748-COA-R3-CV, 2008 WL 4876535, at *4 (Tenn. Ct. App. Nov. 10, 2008) (allowing reliance on the direct action procedure where a summons was issued to the defendant tortfeasor and returned not to be found within one-year of the filing of the complaint); ***Buck v. Scalf***, No. M2002-00620-COA-R3-CV, 2003 WL 21170328, at *3 (Tenn. Ct. App. May 20, 2003) (noting that service of process was timely served on the defendant motorists); ***Lady v. Kregger***, 747 S.W.2d 342, 344 (Tenn. Ct. App. 1987); ("As service of process had been returned 'not to be found' on the motorists sought to be charged November 17, 1985 [less than five months after the filing of the complaint], the Plaintiffs had thus perfected their action against Transamerica as uninsured motorist carrier by complying with the conditions of T.C.A. § 56-7-1206."); *see also* ***Little v. State Farm Mut. Ins. Co.***, 784 S.W.2d 928, 929 (Tenn. Ct. App. 1989) (indicating that service on the defendant tortfeasor was returned "unable to locate," but failing to give exact dates regarding the filing of the complaint or the date of attempted service). Indeed, while this Court has repeatedly held that compliance with section 56-7-1206(d) relieves the plaintiff of the requirement to seek reissuance of a summons, we have never held that the direct action procedure eliminates the requirement that the plaintiff at least cause an initial summons to be issued within one year of the filing of the complaint. *See* ***Kirby***, 2009 WL 499539, at *7 (holding that Rule 3's requirements that process be reissued is suspended by operation of section 56-7-1206(d)); ***Fagg***, 2008 WL 4876535, at *4 (holding that once the plaintiff caused a summons to issue to the defendant's last known address and the summons was returned not to be found, the plaintiff's diligent effort to serve the defendant tortfeasor excused the plaintiff from Rule 3's requirement that the plaintiff "continue to issue service of process in order to proceed against the uninsured motorist carrier); ***Little***, 784 S.W.2d at 929 ("The construction urged upon us by defendant would hold a plaintiff hostage to the requirement of obtaining service on the uninsured motorist or reissuing process from time to time indefinitely, which was not the intention of the legislature."); ***Lady***, 747 S.W.2d at 345 ("[A] literal interpretation of T.C.A. § 56-7-1206(e) allows plaintiffs to by-pass the T.R.C.P. Rule 3 requirement that new process be issued every six months or the action be refiled yearly"). In our view, once the statute of limitations has lapsed on the plaintiff's claim against the tortfeasor, any subsequent action to bring the uninsured motorist insurance carrier into the lawsuit by virtue of section 56-7-1206(d) could be considered a nullity.[4]

This interpretation finds support in this Court's Opinion in ***Webb v. Werner***, 163 S.W.3d 716, 721 (Tenn. Ct. App. 2004). In ***Webb***, the plaintiff filed suit against the

---

[4] This rule is provided, of course, that the uninsured motorist carrier timely raises this defense as required by Tennessee law.

- 10 -

defendant tortfeasor and immediately issued summons to the tortfeasor at a foreign address that had been provided to the police at the time of the car accident. *Id.* at 717. The summons was never sent to that address and after a single attempt to serve it in person in Tennessee, the summons was retained by plaintiff's counsel. *Id.* The copy of the summons included in the record contained an undated hand-written notation that the plaintiff's counsel was "unable to locate" the defendant tortfeasor. Over a year passed before an alias summons was issued and returned unserved and marked "Unbekannt, Inconnu, Sconosciuto." *Id.*[5] The plaintiff's uninsured motorist insurance carrier later filed a motion for summary judgment, arguing that because the claim against the tortfeasor had lapsed, it could not be held liable. *Id.* at 718. The trial court granted the motion with regard to the plaintiff's claim for personal injuries.

On appeal, the plaintiff argued that the trial court erred in dismissing his claim because he complied with the uninsured motorist direct action statute by issuing the initial summons, which plaintiff asserted was unable to be served because the defendant tortfeasor was not to be found. *Id.* at 720. In support, the plaintiff filed an affidavit from his counsel detailing the effort to serve the initial summons. *Id.*

This Court disagreed holding that a plaintiff attempting to utilize the direct action procedure under section 56-7-1206(d) must exercise due diligence to locate and serve the defendant tortfeasor. Quoting an earlier case, the Court noted:

> [W]e believe the statute requires a more diligent effort on the plaintiff's part to preserve her rights, and the rights of her insurer, against the tortfeasor . . . [T]he requirement of service upon the tortfeasor is not imposed on the plaintiff as an empty formality, but as a practical means of maintaining the insurer's right to recover from the responsible party, once it has paid the policyholder . . . [.]

*Id.* at 720 (quoting *Winters*, 932 S.W.2d at 465–66). The *Webb* Court further noted that "Tennessee courts have consistently imposed a requirement of due diligence in attempting to locate and serve process on a defendant in cases such as the present one." *Webb*, 163 S.W.3d at 720 (quoting cases). As such, this Court concluded that:

> [W]hile Tenn. Code Ann. § 56-7-1206(d) allows a plaintiff to proceed directly against an uninsured motorist carrier under certain circumstances even if the uninsured motorist is never successfully served with process, *see* **Brewer v. Richardson**, 893 S.W.2d 935 (Tenn.1995), a plaintiff is still required to make a duly diligent effort to serve process on the uninsured motorist, and when this diligent effort is lacking and an unreasonable

---

[5] The Court did not provide a translation for the notation. *Id.* at 717 n.2.

- 11 -

> amount of time has passed, a plaintiff cannot use the uninsured motorist statute to avoid the requirements of [Rule] 3.

***Webb***, 163 S.W.3d at 720–21.[6] Applying this rule to the facts in ***Webb***, this Court concluded that the plaintiff failed to establish due diligence in attempting to serve the defendant tortfeasor because the plaintiff made minimal attempts to serve the summons and made no effort to deliver the initial summons to the defendant tortfeasor's last known address.

Applying the holding in ***Webb*** to the facts in this case is somewhat problematic. Importantly, this Court's decision in ***Webb*** focused almost exclusively on the service of the summons initially issued, rather than the alias summons that was issued beyond one-year from both the filing of the complaint and the issuance of the initial summons. *See **id.*** at 720–21 (discussing plaintiff's counsel's efforts to serve the initial summons). Indeed, when discussing the alias summons, we noted that the notation contained on that summons was irrelevant to the issues presented in the case. ***Id.*** at 717 n.2. As such, the ***Webb*** decision could be interpreted to mean that only the summons that was timely issued and attempted to be served in compliance with Rule 3's terms is sufficient to trigger the direct action procedure outlined in section 56-7-1206(d). Under that interpretation, Appellants' action in issuing their first summons to Mr. Hobock well beyond one-year from the time of the filing of their complaint is inadequate to trigger the direct action procedure necessary to maintain this action against Appellee.

Still, the ***Webb*** Court did not affirm the trial court's dismissal of the complaint on that basis, but instead because the plaintiff failed to exercise due diligence throughout the proceedings to locate and serve the defendant tortfeasor. *See **id.*** at 721 (considering the plaintiff's efforts in the time between the issuance of the initial summons and the issuance of the alias summons). As such, the ***Webb*** decision could be interpreted to hold that a summons issued after the expiration of the personal injury statute of limitations may nevertheless be sufficient to trigger the direct action procedure where the plaintiff

---

[6] In a more recent unreported case, this Court questioned the holding in ***Webb*** and asserted that the due diligence requirement outlined in ***Webb*** applied to the plaintiff's efforts to comply with section 56-7-1206(d) and (e), not necessarily with the strict requirements of Rule 3. ***Kirby***, 2009 WL 499539, at *6 (indicating that due diligence was not met in ***Webb*** not because of the delay in attempting service, but because the plaintiff failed to attempt to serve the defendant tortfeasor at his last known address, as required by the plain language of section 56-7-1206(d)). In ***Kirby***, we held that the due diligence requirement was met because, at the time of the filing of the lawsuit, the plaintiff caused a summons to be issued to the defendant tortfeasor at his last known address, which was returned not to be found. ***Id.*** at *7. As such, the facts in this case are not analogous. In addition, other panels of this Court have considered the plaintiff's due diligence in attempting to serve the defendant tortfeasor. *See **Fagg***, 2008 WL 4876535, at *4 (concluding that due diligence was met where, concurrent with the filing of the complaint, the plaintiff caused a summons to issue to the defendant tortfeasor's last known address, which was returned not to be found, and thereafter attempted twice more to effectuate service on the defendant tortfeasor).

exercised due diligence under the circumstances. Even under this interpretation, however, Appellants' claim must fail. Here, it is undisputed that Appellants failed to not only attempt to serve Mr. Hobock within the year following the filing of the complaint, Appellants also failed to even issue a summons during this time. Once a summons was issued, it was returned by the private process server after just two days, with the notation that Mr. Hobock was not to be found. Moreover, the record on appeal contains no affidavits from Appellants or their counsel concerning their efforts to locate and serve Mr. Hobock during the intervening thirteen months. Thus, even assuming *arguendo*, that the issuance of a summons beyond one-year may be sufficient to allow application of section 56-7-1206(d) direct action procedure, Appellants failed to show the due diligence required to rely on the statute. Indeed, the cases relied upon by Appellants to support their interpretation of section 56-7-1206(d) as completely superseding the requirements of Rule 3 are inapposite to the case-at-bar because the plaintiff in those cases actually caused a timely summons to issue, and, in fact, attempted to serve the summons on the defendant tortfeasor within one-year of the filing of the complaint. *See, e.g., **Brewer***, 893 S.W.2d at 939 (allowing reliance on the direct action procedure where a summons was issued and returned within a month of the filing of the complaint); ***Lady***, 747 S.W.2d 342 (allowing the plaintiff to rely on section 56-7-1206(d) where a summons was issued and returned not to be found within one-year of the filing of the complaint); ***Fagg***, 2008 WL 4876535, at 4 (Tenn. Ct. App. Nov. 10, 2008) (same); ***Kirby***, 2009 WL 499539 (same). In those cases, unlike in this case, the plaintiff exercised due diligence to locate and serve the defendant tortfeasor. Appellants in this case exhibited no similar effort.

In sum, Appellants did not attempt to issue a summons to either defendant until after the statute of limitations on Appellants' claim against Mr. Hobock had already expired. Because the Appellants failed to have process issued to Mr. Hobock within the timeline set out in Rule 3 of the Tennessee Rules of Civil Procedure, the filing of their complaint was insufficient to toll the statute of limitations on that claim, and Appellants' claim against Mr. Hobock is now barred by the applicable statute of limitations. Nothing in the record establishes that Appellants exerted due diligence in an effort to locate and serve Mr. Hobock, even prior to his death.[7] Because Appellants failed to exercise due diligence to locate and serve Mr. Hobock, they may not rely on the direct action procedure available through Tennessee Code Annotated section 56-7-1205(d). *See **Webb***, 163 S.W.3d at 720–21. Where the direct action procedure is unavailable, the lapse of a plaintiff's claim against the tortfeasor is likewise fatal to any claim against the plaintiff's own uninsured motorist carrier. *See **Winters***, 932 S.W.2d at 465–66. The trial court therefore did not err in dismissing this case in its totality.

---

[7] Death alone is insufficient to trigger application of section 56-7-1206(d). See ***Liput***, 405 S.W.3d at 675–76. In ***Liput***, despite fact that the defendant tortfeasor had died, his death alone was insufficient to trigger the direct action procedure outlined in section 56-7-1206(d) where there was no attempt to serve the tortfeasor, nor was any summons returned as "Not to be found." ***Id.***

## Conclusion

Accordingly, the trial court's judgment is affirmed, and this cause is remanded to the trial court for further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellants, Annie Davis and William Davis, and their surety.

_____
J. STEVEN STAFFORD, JUDGE