IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2018 Session

### ANNE SHACKLETT v. ANTHONY A. ROSE ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 09218     Joseph Woodruff, Judge**

_____

### No. M2017-01650-COA-R3-CV

_____

This is a slip-and-fall case. An employee of a catering company fell, injuring herself when leaving a private residence after dark as she attempted to traverse an outside staircase. The employee brought suit against the homeowners, and the homeowners filed a motion for summary judgment. The trial court granted the homeowners' motion, concluding that the homeowners did not owe the employee a duty of care. Our review of the record has revealed that material, disputed facts remain which render this case inappropriate for summary judgment. Accordingly, we reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Nancy K. Corley, Nashville, Tennessee, for the appellant, Anne Shacklett.

Janet Strevel Hayes and Susan W. Carey, Knoxville, Tennessee, for the appellees, Anthony A. Rose, Successor Executor of the Estate of W. Alexander Steele and Saundra Steele.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

On April 13, 2009, Appellant Anne Shacklett filed a complaint against co-defendants Alexander Steele and his wife Saundra Steele (together "Appellees," or "the Homeowners") to recover damages for personal injuries Ms. Shacklett sustained in a fall down the outside stairs leading from the kitchen at the Homeowners' residence when she

was leaving the residence after dark.[1]  Prior to her fall, Ms. Shacklett had been working in the Homeowners' kitchen as an employee of a catering service hired by the Homeowners for a private event.  It is undisputed that it was daylight when Ms. Shacklett arrived at the residence, and she traversed the outside stairs leading from the kitchen without incident multiple times during daylight hours.  In relevant portion, the complaint described Ms. Shacklett's fall as follows:

> Plaintiff was exiting the home at the end of the party and went down the side kitchen steps, falling through a break in the railing and landing on the bottom on concrete or other hard surface on her face. There were no house lights and the motion lights on the steps where Plaintiff fell were not operating. It was night and unlit so that the entire area was dark and therefore dangerous. These side kitchen steps [were] the only way for Plaintiff to ingress and egress the house as [the Homeowners] had provided no other way for the caterers to enter or exit the house. They were difficult to maneuver, not well lit, and had a broken and/or defective railing, through which Plaintiff fell.

The Homeowners answered on May 28, 2009.[2]  Regarding Ms. Shacklett's allegations concerning the inadequacy of the outdoor lighting, the Homeowners "den[ied] that 'there were no house lights,' and they also denied that the residence utilized 'motion lights on the steps' as alleged[.]"  They also "den[ied] that the 'entire area was dark and therefore dangerous.'"  Later on in the discovery process, the Homeowners responded to Ms. Shacklett's requests for admissions.  The Homeowners stated that the "outside lighting was working" on the night of the accident. Ms. Shacklett also prompted the Homeowners to "[a]dmit that the outside lighting illuminating the steps was on a timer which automatically shut off the outside lights at a specified hour."  In response, the Homeowners stated as follows:

> Objection. This request refers to "the outside lights," without establishing that there was only one light to justify the use of the singular none [sic] light. Denied as phrased, while the outside light was on a timer, Defendant overrode the timer by placing the lights "all on" for the party.

Ms. Shacklett was deposed, and she gave the following testimony concerning the circumstances surrounding her fall, excerpted in part as follows:

---

[1] Mr. Steele passed away on October 23, 2012, and Anthony A. Rose, Successor Executor of the Estate of W. Alexander Steele was properly substituted as a party.

[2] After Mr. Steele's death, Ms. Shacklett filed an amended complaint, and Ms. Steele filed an amended answer. In substance, the amended pleadings are the same as the original pleadings, except that Mr. Steele's estate was substituted as a party.

Q: So what happened to cause your accident?

A: After the party was over, I was leaving by myself from the kitchen going out down the stairs, holding on the rail. I was not carrying anything but my purse. And I went down the first set, a few stairs, turned to go down. The rail gave out. I mean, when I say "gave out," I mean it ended, and I plunged to the ground on my face.

. . .

Q: Were you looking where you were going?

A: Certainly, but it was black. I mean, it was dark. It was out in the country. It was dark.

. . .

Q: When did you notice that there were no lights on outside?

A: Well, when I went out. When I went out.

Q: When you opened the door to go out?

A: After I got outside.

Q: And so when you—when you chose to go down the stairs, you knew there was no light.

A: Yes.

Q: Why didn't you turn on the lights?

A: I didn't know where there were [exterior] lights. I was careful, holding onto the rail.

. . .

Q: Now, you said that the rail ended at some point; is that right?

A: Yes.

Q: And did you stop when it ended or did you keep going?

A: Well, I wasn't expecting it to end, so I just kept going.

Q: Okay.

A: I mean, I was just—with my right hand I was holding onto the rail and all of a sudden—I wasn't expecting it.

. . .

Q: And you went up and down more than once [when it was light outside]?

A: More than once but not very much.

. . .

Q: The other times you had gone up and down the stairs, had you had any problem?

A: No. It was daylight.

Q: Had you been on the stairs at all in the dark?

A: No. Just when I left.

On March 17, 2017, the Homeowners filed a motion for summary judgment alleging, *inter alia*, that they owed no duty of care to Ms. Shacklett.[3] In the motion for summary judgment, despite their previous statements, the Homeowners took the position that the exterior lights were off when Ms. Shacklett fell, and Ms. Shacklett was negligent in failing to turn the lights on before proceeding down the stairs.

A hearing was held, and on July 18, 2017, the trial court entered an order granting the Homeowners' motion for summary judgment. Relying heavily on *Eaton v. McClain*, 891 S.W.2d 587, 594 (Tenn. 1994), the trial court concluded that the Homeowners owed Ms. Shacklett no duty.

Ms. Shacklett timely appealed.

### ISSUES PRESENTED

Ms. Shacklett raises three issues for our review, which we restate as one dispositive issue as follows:

- Whether the trial court erred in granting summary judgment?

---

[3] In support of their motion for summary judgment, the Homeowners also filed a portion of Ms. Shacklett's deposition, a memorandum of law, and a statement of undisputed material facts.

- 4 -

This Court recently discussed the standard of review that we apply in an appeal from the grant of a motion for summary judgment as follows:

[S]ummary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. On appeal, this Court reviews a trial court's grant of summary judgment *de novo* with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)), *cert. denied*, 136 S. Ct. 2452, 195 L.Ed. 2d 265 (2016). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). When a moving party has filed a properly supported motion for summary judgment, the nonmoving party must respond by pointing to evidence that shows summary judgment is inappropriate. *Rye*, 477 S.W.3d at 264–65. This Court may affirm the trial court's grant of summary judgment on different grounds than that relied upon by the trial court. *Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (citing *Wood v. Parker*, 901 S.W.2d 374 (Tenn. Ct. App. 1995)).

*Sons of Confederate Veterans Nathan Bedford Forrest Camp #215 v. City of Memphis*, No. W2017-00665-COA-R3-CV, 2017 WL 4842336, at *3 (Tenn. Ct. App. Oct. 24, 2017).

"If there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition." *Liput v. Grinder*, 405 S.W.3d 664, 669 (Tenn. Ct. App. 2013). Our Supreme Court has stated:

The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, **or where there is uncertainty as to whether there may be such**

**a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.**

*EVCO Corp. v. Ross*, 528 S.W.2d 20, 25 (Tenn. 1975) (emphasis added).

## DISCUSSION

Negligence cannot be presumed by the mere happening of an accident. *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn. Ct. App. 1971). "'[P]eople fall all the time[,] but this does not perforce mean that the fall was due to another's negligence[.]'" *Mooney v. Genuine Parts Co.*, No. W2015-02080-COA-R3-CV, 2016 WL 2859149, at *3 (Tenn. Ct. App. Apr. 20, 2016) (citation omitted). Thus, a claim for negligence requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate cause. *See West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005) (citing *Coln v. City of Savannah*, 996 S.W.2d 34, 39 (Tenn. 1998)). "Negligence cases are generally unamenable to disposition at the summary judgment stage, unless the inferences and facts taken together 'are so certain and uncontroverted that reasonable minds would agree.'" *Boykin v. George P. Morehead Living Tr.*, No. M2014-00575-COA-R3-CV, 2015 WL 3455433, at *2 (Tenn. Ct. App. May 29, 2015) (quoting *Burgess v. Tie Co. 1, LLC*, 44 S.W.3d 922, 923 (Tenn. Ct. App. 2008)).

As stated above, the trial court granted summary judgment because it concluded that there were no disputed material facts, and the Homeowners owed no duty to Ms. Shacklett as a matter of law. On appeal, Ms. Shacklett argues that there are disputed material facts, and summary judgment was inappropriate. In her appellate brief, Ms. Shacklett argues that there are disputed facts concerning: the adequacy of the lighting (whether the lights were on or off, and if they were on, if they were adequate and operative); Ms. Shacklett's familiarity with the layout of the stairs and break in the railing; and, assuming the lights were off, whether Ms. Shacklett could have successfully located the light switch or someone to assist her in turning on the outside lights. The Homeowners defend the trial court's grant of summary judgment, arguing that there are no disputed material facts, and Ms. Shacklett failed to establish the duty element of her claim as a matter of law. In the alternative, the Homeowners aver that this Court should affirm the trial court's grant of summary judgment on the basis of comparative fault principles.

Because summary judgment is predicated on there being no "uncertainty as to whether there may be" a dispute of material fact, we first consider Ms. Shacklett's

- 6 -

contention that disputed material facts preclude summary judgment. *Ross*, 528 S.W.2d at 25. This Court has an obligation to "determine whether factual disputes exist," even if both parties allege that no material facts are in dispute. *See Liput*, 405 S.W.3d at 670 (quoting *Brooks Cotton Co., Inc. v. Williams*, 381 S.W.3d 414, 419 (Tenn. Ct. App. 2012) (finding facts in dispute, despite the fact that both parties alleged that no material facts were in dispute)).

## I. DUTY

We will first evaluate whether there are disputed, material facts relevant to the duty element of Ms. Shacklett's negligence claim. A homeowner is not an insurer of the safety of those who enter upon his or her property. *See Eaton*, 891 S.W.2d at 594. Thus, as in every negligence suit, the first element in a premises liability suit is "duty." *See id.*; *E. Tenn. Pioneer Oil Co.*, 172 S.W.3d at 550. "Duty is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm." *See Howard v. FMS, Inc.*, No. 01A01-9709-CV-00479, 1998 WL 195960, at *2 (Tenn. Ct. App. Apr. 24, 1998) (citing *McCall*, 913 S.W.2d at 153); *E. Tenn. Pioneer Oil Co.*, 172 S.W.3d at 550 ("The duty owed to the plaintiffs by the defendant is in all cases that of reasonable care under all of the circumstances."). A risk is unreasonable if the foreseeable probability and gravity of harm posed by the defendant's conduct outweigh the burden upon the defendant to engage in alternative conduct that would have prevented the harm. *Coln*, 996 S.W.2d at 43 (citation omitted). "In analyzing duty, the court must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm." *Matherne v. West*, No. E2015-02061-COA-R3-CV, 2016 WL 6311283, at *10–11 (Tenn. Ct. App. Oct. 28, 2016). The degree of foreseeability needed to establish a duty of care decreases in proportion to increases in the magnitude of the foreseeable harm. *Howard*, 1998 WL 195960, at *2 (citations omitted). "The risk involved must be one which is foreseeable; 'a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable.'" *E. Tenn. Pioneer Oil Co.*, 172 S.W.3d at 551 (quoting *Doe v. Linder Constr. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992)). The duty analysis presents a question of law; thus, a motion for summary judgment is an appropriate mechanism for determining a defendant's duty when the material facts are undisputed. *Id.* (citing *Nichols v. Atnip*, 844 S.W.2d 655, 658 (Tenn. Ct. App. 1992)).

This Court has described the applicability of duty in premises liability cases as follows:

> In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises. The duty includes the responsibility to remove or warn

against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence. *See Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McLain*, 891 S.W.2d 587, 593–94 (Tenn. 1994). Although the traditional rationale for imposing this duty was the owner's superior knowledge of conditions on the premises, *see e.g.*, *Kendall Oil v. Payne*, 41 Tenn. App. 201, 293 S.W.2d 40, 42 (Tenn. App. 1955), we recently held that a duty may exist even where the injury-causing condition is alleged to be "open and obvious" to the plaintiff. We explained:

> That a danger to the plaintiff was 'open or obvious' does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A) relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if 'open and obvious,' outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

*Matherne*, 2016 WL 6311283, at *10–11 (quoting *Coln*, 966 S.W.2d at 43).

As indicated above, the question of whether the Homeowners' general duty of care encompasses the duty to guard against the acts set forth in the complaint involves an analysis of the foreseeability of the risk to which Ms. Shacklett was exposed. In other words, the issue is whether Ms. Shacklett has made "any showing from which it can be said that the *defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused [her] injuries*." *Eaton*, 891 S.W.2d at 594 (quoting *Linder*, 845 S.W.2d at 178) (emphasis in original).

The Homeowners and the trial court have relied heavily on *Eaton* for the proposition that the Homeowners did not owe Ms. Shacklett a duty because her actions were unreasonable, and thus her accident was not foreseeable. *Id*. at 594–95. In *Eaton*, a grandmother visiting her daughter and son-in-law got out of bed in the night to use the restroom, which was located across the hall. *Id*. at 589. Even though the grandmother knew the house was equipped with indoor lighting capable of illuminating the hallway, she opted not to turn on any lights for fear of waking her grandson. *Id*. She was also aware that the door to the basement was located beside the bathroom door. *Id*. Nevertheless, the grandmother mistakenly opened the unlocked basement door instead of the bathroom door, stepped into the dark basement without turning on a light, and injured

herself falling down the basement stairs. *Id*. Our Supreme Court concluded that the homeowners did not owe the grandmother a duty, explaining its reasoning as follows:

> In order for the McLains to be charged with the duty to leave on the light in the hall and to lock the basement door, they must have been able to reasonably foresee that Ms. Eaton would get out of bed in total darkness, walk across the hall, and step into the basement stairwell, all without turning on any lighting whatsoever. While our holding would likely be different if no lighting had been provided or if it had been inoperative, Ms. Eaton's failure to turn on any lights, coupled with her willingness to open the door and step into an unfamiliar area, is such a radical departure from reasonable conduct under the circumstances that the McLains could not have reasonably foreseen that conduct and its consequences. To hold otherwise would necessarily cast the premises owner in the role of an absolute insurer of the social guest's safety, which is not contemplated by our negligence law.

*Id*. at 594.

The trial court concluded that *Eaton* was factually and legally analogous to the case at bar, and the Homeowners owed Ms. Shacklett no duty. We disagree with the trial court's reasoning, and we find *Eaton* distinguishable from this case for several reasons. First, in *Eaton*, the grandmother was familiar with the layout of her daughter's home, and she knew that the house was equipped with indoor lighting capable of lighting the hallway. *Id*. at 589–95. Nevertheless, the grandmother willingly chose not to turn on any of the lights because she did not want to risk waking up her grandson. *Id*. at 589. Moreover, it was undisputed that the grandmother's mistake and resulting injuries could have been prevented had she simply turned on the lights. *Id*.

However, unlike the grandmother in *Eaton*, Ms. Shacklett testified that "she did not know where there were [exterior] lights" or where the light switch for those hypothetical lights could be located. *See id*. at 595.[4] The complaint averred that Ms. Shacklett believed "there were no [exterior] house lights and the motion lights on the steps where [she] fell were not operating." For their part, the Homeowners gave conflicting statements concerning the adequacy and operability of the outdoor lighting around the area where Ms. Shacklett fell. First, in their answer, the Homeowners "den[ied] that the 'entire area was dark and therefore dangerous,'" but stated that the stairs were not equipped with motion lights. In their responses to Ms. Shacklett's requests

---

[4] In *Eaton*, the Supreme Court also cited *Quinlan v. Cecchini*, 41 N.Y.2d 686 (N.Y. Ct. App. 1977), for the premise that a defendant's "failure to leave [a] light on may constitute negligence where the visitor was unfamiliar with [the] home, the stairwell was open, and the door to [the] vestibule in which [the] stairwell was located swung open in such a way as to conceal [the] light switch."

for admissions, the Homeowners doubled down on their position that the area where Ms. Shacklett fell was adequately lit stating that the "outside lighting was working," and averring that, "while the outside light was on a timer, Defendant overrode the timer by placing the lights 'all on' for the party." However, in their motion for summary judgment and supporting memorandum, in an apparent attempt to analogize to *Eaton*, the Homeowners averred that the outside stairs were dark and the lights were turned off, placing the blame for the accident on Ms. Shacklett for "decid[ing] to traverse the stairs in complete darkness." The operability and effectiveness of the outside lighting on the night of the party is relevant to the resolution of Ms. Shacklett's negligence claim, and it is unclear from the record whether the facts concerning the lighting are in dispute. *See Liput*, 405 S.W.3d at 669 ("If there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition."); *see also Ross*, 528 S.W.3d at 25 ("Where there does exist a dispute as to facts which are deemed material . . . or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment.").

The second reason we find *Eaton* distinguishable is because in *Eaton*, the homeowners did not owe a duty partly because they did not have any reason to believe anyone would enter the basement area of their home in the middle of the night. *See Eaton*, 891 S.W.2d at 594. In this case, it is undisputed that the caterers were told to use the back outside stairs, and the Homeowners were aware the caterers would be using those stairs on the evening of the party. Because the Homeowners knew the caterers would be using the back outside stairs after dark, it was comparably more foreseeable than in *Eaton* that someone could injure himself or herself while attempting to navigate the stairs in the darkness.

Finally, and perhaps most significantly, we find *Eaton* distinguishable because the condition that caused the grandmother to fall was undisputedly and exclusively the dark basement staircase. Had the grandmother turned on the lights, she would have seen the stairs and could have prevented her own injuries. However, in this case, the dark stairs were not the only condition on the Homeowners' premises that could have contributed to Ms. Shacklett's injuries. Specifically, the complaint alleged that the "broken and/or defective railing" caused Ms. Shacklett to fall. Inexplicably, the trial court failed to acknowledge the railing in its analysis. For the aforementioned reasons, we decline to follow *Eaton* in this case.

We find the facts in *Pope v. Blaylock*, No. W2004-02981-COA-R3-CV, 2006 WL 548268, at *1 (Tenn. Ct. App. Jan. 18, 2006), more closely analogous to this case than the facts in *Eaton*. In *Pope*, a social guest arrived at the defendant homeowner's home before sunset and walked up the outside walkway to the house without incident. *Id*. When the guest left the home, it was dark outside, the outside house lights were turned off, and the plaintiff tripped over a brick retaining wall and fell injuring herself. *Id*. at *1. The guest brought a personal injury suit, and the trial court granted the homeowner's motion

for summary judgment, concluding that the homeowner did not owe the social guest a duty of care. *Id.* at *2–4. On appeal, the social guest argued that there were material facts in dispute that rendered the case inappropriate for disposition at the summary judgment stage. *Id.* at *4. This Court reversed the trial court's grant of summary judgment, stating as follows:

> Even though [the social guest] was somewhat familiar with the walkway and wall in the daylight owing to her arrival before nightfall, **there is dispute in the record as to whether the same walkway and/or wall became a dangerous condition on the homeowner's property under cover of darkness**. Although it is undisputed that the [homeowner's] porch light was not turned on when [the social guest] left that evening, **the question of whether the lighting (or lack thereof), as it existed at the time of the fall, was the cause in fact of [the social guest's] accident, is still very much in dispute in the record.**

*Id.* at *5 (emphasis added).

Similar to the retaining wall in *Pope*, in the case at bar, there is a dispute over whether the railing became a dangerous latent condition on the Homeowners' property under cover of darkness, and it is also disputed whether the lighting (or lack thereof) as it existed at the time of the accident was the cause in fact of Ms. Shacklett's accident. We note that the trial court erred in resting its analysis on factual assumptions that were not established by the proof or appropriate at the summary judgment stage. For example, although there were clearly conflicting factual allegations in the record concerning the lighting, the trial court stated that "the exterior lights were not on" and assumed that "it [was] undisputed that the Steeles provided operative lights that were capable of illuminating the stairwell." Our review of the record reveals no proof concerning the location of existing exterior lights around the stairs or whether those lights were capable of illuminating the stairs on the night of the party had the lights been turned on. The resolution of these factual issues by the jury will affect the court's application of the duty balancing test. For example, if the jury concludes that the Homeowners provided adequate and operable exterior lighting that was simply turned off and the railing did not constitute a latent dangerous condition after dark, the reasonably foreseeable probability of Ms. Shacklett's accident occurring would be less than if the jury concludes that the railing was a latent defect,[5] and the Homeowners' outside lighting was turned on but failed to illuminate the area where Ms. Shacklett fell. We reiterate that "summary

---

[5] It is well settled that property owners have a duty to warn their guests about known latent defects on their property. *See Matherne*, 2016 WL 6311283, at *11 ("The duty [of property owners] includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence.") (citations omitted).

judgment proceedings are not in any sense to be viewed as a substitute for trial of disputed factual issues." *See Ross*, 528 S.W.2d at 25. Having carefully reviewed the record, we are unable to determine whether or not the Homeowners owed Ms. Shacklett a duty of care because of conflicting relevant, material factual allegations in the record.

Lastly, we point out that the trial court also erred in citing *Eaton* for the premise that, "[w]hile a premise owner owes a duty to warn of latent or hidden dangers, no duty arises if the danger is open and obvious." We respectfully disagree. Even if the fact-finder concludes that the break in the railing was an "open and obvious" danger, the Homeowners would not necessarily be relieved of their duty of care. *See Matherne*, 2016 WL 6311283, at *13. For example, in *Matherne*, a woman injured herself when she fell off an elevated parking level while vacationing at the defendant homeowners' cabin. *Id.* at *1.[6] The plaintiff admitted that she was familiar with the drop off in the pavement and the lack of railing. *Id.* at *2. Having concluded that the homeowners owed the plaintiff no duty because the plaintiff had actual knowledge of the potential danger, the trial court granted summary judgment, and the plaintiff appealed. *Id.* at *1. This Court determined that summary judgment was inappropriate, and the homeowners owed the plaintiff a duty of care even though the danger was open and obvious. See *id.* at 13. We explained our reasoning as follows:

> **Mrs. Matherne knew the risk.** According to Defendants, this should be sufficient to grant their motion for summary judgment.
>
> However, Mrs. Matherne's **knowledge of the risk does not end our inquiry.** . . . **[E]ven an "open and obvious" hazard does not necessarily relieve a defendant of a duty of care.** We must determine whether the reasonably foreseeable probability and gravity of harm from a possible fall while using the upper parking level as intended outweighed the burden upon Defendants to engage in alternative conduct which would have prevented a risk of harm to Plaintiffs. . . . [T]**he danger of falling off this elevated parking level was obvious to Mrs. Matherne. We conclude, nevertheless, that Defendants owed a duty of care.**

*Id.* (emphasis added).

In this case, even if the jury concludes that the dark stairs/ railing constituted an open and obvious danger, the trial court must still apply the duty balancing test to

---

[6] A photo of the parking areas was made an exhibit in the case and appears on Westlaw. *See Matherne*, 2016 WL 6311283, at *1. The cabin had two areas of parking—a lower level and an upper area—which were located on a steep hill parallel to each other. *Id.* The concrete that made up the upper parking area formed a platform that dropped off at a ninety degree angle forming the boundary between the parking areas. *Id.* A railing extended over a portion of the boundary line, but the railing did not extend the entire length of the boundary/drop off. *Id.*

determine whether the reasonably foreseeable probability and gravity of harm outweighed the burden upon the Homeowners to engage in alternative conduct which would have prevented a risk of harm to Ms. Shacklett. However, as we stated above, the duty balancing test cannot be applied at this point in the proceedings because material, relevant facts remain in dispute. Thus, the trial court erred in granting summary judgment based upon duty.

## II. BREACH OF DUTY, INJURY OR LOSS, CAUSE IN FACT, PROXIMATE CAUSE, AND DEFENSES

In addition to proving the existence of a duty of care, Ms. Shacklett still bears the burden of establishing the remaining elements of negligence: breach of duty, injury or loss, cause in fact, and proximate cause. In light of our decision that this case is inappropriate for summary judgment, the jury should also resolve these remaining elements.

Lastly, the Homeowners urge this Court to affirm the judgment of the trial court granting summary judgment because they contend that no reasonable juror could conclude that Ms. Shacklett was less than fifty percent at fault for her own injuries because she failed to turn on the outside lights.[7] The Homeowners' argument clearly rests on the assumption that the outside lights around the stairs were indeed turned off when Ms. Shacklett fell. As stated above, the trial court erroneously based its analysis on the assumption that the lights were off, stating unequivocally in its order, "it is undisputed that the Steeles provided operative lights that were capable of illuminating the stairway." However, based upon our review of the record and the parties' attorneys' statements at oral argument, it appears that uncertainty remains concerning whether the outside lights surrounding the area where Ms. Shacklett fell were turned on, or turned off, or adequate, or operable on the night of the party.

For example, in response to Ms. Shacklett's interrogatories, the Homeowners stated, "while the outside lights were on a timer, Defendants overrode the timer by placing the lights 'all on' for the party." However, despite this statement, it is currently the Homeowners' firm position that the lights were off, and Ms. Shacklett bore the responsibility of turning on the lights before she proceeded down the stairs. At oral argument, the panel questioned the parties' attorneys in an attempt to clarify the nature of the factual dispute concerning the exterior lighting, and it became clear to us that the parties' disagreement persists. For example, the following exchange occurred between the panel and the Homeowners' counsel:

---

[7] *See Matherne*, 2016 WL 6311283, at *14 (citing *Hill*, 73 S.W.3d at 136) ("This Court may affirm the trial court's grant of summary judgment on different grounds than that relied upon by the trial court.").

- 13 -

Q: ['All-on'] doesn't mean the lights would remain on?

A: Correct.

In contrast, the following exchange occurred between Ms. Shacklett's counsel and the panel:

Q: [W]hat does that mean? 'All-on?' Does that mean that the timer means that the lights were to remain on for the entirety of the party or that the timer had been overridden so that the lights could be manually controlled? How do we know?

A: It simply says they were 'all on[.]' . . . **So at this point, we really don't know the answer of why those lights were not working, whether or not they were actually turned off, whether or not they weren't working, or whether or not they were actually so dim that they did not illuminate the area so that she could see the steps.**

. . .

Q: Was the override though for the purpose of making sure that the lights did not go off at a particular time and not come back on?

A: The Homeowners said that they had overridden the timer so that the lights were 'all-on' for the party. And there were outside lights on. There were outside lights at the bottom of the steps, but there were no outside lights on at the top of the steps. So I think you can make an inference that something was wrong with the lights by the door.

Clearly factual disputes remain concerning several issues including the lighting, which make it impossible for us to determine which party was more at fault for Ms. Shacklett's accident. Thus, the jury should also decide whether Ms. Shacklett's own negligence, if any, equaled or outweighed the Homeowners' negligence, if any. *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 825 (Tenn. 2008) (citing *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005) (stating the allocation of comparative fault is a determination of fact to be made by the jury)).

CONCLUSION

In summary, we conclude that there are genuine issues of material fact that render summary judgment inappropriate. Again, we reiterate that "[n]egligence cases are generally unamenable to disposition at the summary judgment stage, unless the inferences and facts taken together 'are so certain and uncontroverted that reasonable

minds would agree.'" *See Boykin*, 2015 WL 3455433, at *2 (quoting *Burgess*, 44 S.W.3d at 923). Here, that is clearly not the case. For the aforementioned reasons, we reverse the judgment of the trial court granting summary judgment to the Homeowners. This case is remanded for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE
